EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Brenda Gil Enseñat<br><br>Demandante-recurida<br><br>vs.<br><br>Orlando Marini Román<br><br>Demandado-peticionario | Certiorari<br><br>2006 TSPR 59<br><br>167 DPR ____ |

Número del Caso: CC-2003-773

Fecha: 18 de abril de 2006

Tribunal de Circuito de Apelaciones:

                Circuito Regional IV-Aguadilla/Mayagüez

Juez Ponente:

                Hon. Yvonne Feliciano Acevedo

Abogados de la Parte Recurrida:

                Lcdo. Francisco J. Rivera Álvarez
                Lcda. Marisel Peña Senati


Abogados de la Parte Peticionaria:

                Lcdo. Ariel O. Caro Pérez
                Lcdo. Arnaldo Castro Callejo


Materia: Sentencia Declaratoria División de Bienes

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Brenda Gil Enseñat

    Demandante-recurrida

       vs.                CC-2003-773    CERTIORARI

Orlando Marini Román

    Demandado-peticionario

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 18 de abril de 2006

Los hechos del presente caso, sobre los cuales no existe controversia, evidencian que el 2 de mayo de 1995, Brenda Haydeé Gil Enseñat y Orlando Marini Román otorgaron capitulaciones matrimoniales, mediante la Escritura Pública Número 47 ante el Notario Público Edwin S. Miranda Hernández; ello con el propósito de establecer que su matrimonio se regiría por la total separación de bienes. Al momento del referido otorgamiento, Marini Román, contaba con 38 años de edad. Por su parte, Gil nseñat era menor de edad --contaba con 19 años-- y no estaba emancipada.[1]

---

[1] Gil Enseñat nació el 6 de marzo de 1976 en Mayagüez, Puerto Rico.

La madre de Gil Enseñat, Alma I. Enseñat Planell --quien tenía la custodia sobre ella y compartía la patria potestad con el padre de la referida menor-- compareció al antes mencionado otorgamiento y firmó la escritura pública sobre capitulaciones[2]. No obstante, el padre de Gil Enseñat, Fernando A. Gil Guerra, no compareció al referido otorgamiento, aun cuando, repetimos, también ejercía patria potestad sobre la menor.[3]

Cuatro días más tarde, el 6 de mayo de 1995, Gil Enseñat y Marini Román contrajeron nupcias, acto al cual concurrieron los dos progenitores de la menor.[4] Aproximadamente cuatro (4) años más tarde, la pareja presentó ante el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Aguadilla, una petición de

---

[2] En la Escritura se estableció la comparecencia y consentimiento de la madre de la siguiente forma:

> QUINTO: La compareciente, doña Alma Ibelisa Enseñat Planell, madre con patria potestad y custodia sobre la menor contratante, Brenda Haydeé Gil Enseñat, comparece en esta escritura a los únicos fines de dar su consentimiento expreso al otorgamiento de la presente escritura por parte de su hija menor y manifiesta estar plenamente de acuerdo con las capitulaciones aquí acordadas. (Énfasis suplido).

[3] Es preciso señalar que el vínculo matrimonial que unía a los padres de Gil Enseñat quedó disuelto mediante sentencia de 26 de abril de 1982 dictada por el antiguo Tribunal Superior de Mayagüez, en un procedimiento por consentimiento mutuo. En virtud de la referida sentencia la custodia de Gil Enseñat y su hermano le fue adjudicada a su madre mientras que la patria potestad sería compartida por ambos progenitores.

[4] Posteriormente, el 6 de marzo de 1997 --estando casada-- Gil Enseñat cumplió 21 años.

divorcio por la causal de consentimiento mutuo. Mediante sentencia a esos efectos, el 24 de marzo de 1999 el referido foro primario declaró roto y disuelto el vínculo matrimonial existente entre las partes por la referida causal. Además de hacer constar que durante el matrimonio no se procrearon hijos, el tribunal de instancia determinó que las partes no tenían bienes gananciales toda vez que, previo a su boda, habían otorgado capitulaciones matrimoniales.[5]

Posteriormente, el 31 de octubre de 2002 Gil Enseñat presentó ante el Tribunal de Primera Instancia, Sala Superior de Mayagüez, una demanda, sobre sentencia declaratoria y división de bienes, impugnando la validez de las antes mencionadas capitulaciones matrimoniales. Alegó, en síntesis, que las capitulaciones matrimoniales eran radicalmente nulas, toda vez que, conforme al Artículo 1270 del Código Civil, 31 L.P.R.A. § 3554, era necesario que ambos padres con patria potestad comparecieran a su otorgamiento; argumentó que, al no mediar el consentimiento de su padre, las capitulaciones eran inválidas, por lo cual, durante el matrimonio se constituyó una sociedad legal de gananciales, cuyos bienes aún no habían sido divididos. En virtud de lo anterior, Gil Enseñat solicitó que se reconociera la existencia de una sociedad legal de gananciales mientras existió el

---

[5] La referida sentencia no fue apelada por lo cual advino final y firme.

matrimonio y que se ordenara la división de la alegada comunidad.

Marini Román presentó ante el foro primario una moción solicitando que se dictara sentencia sumaria a su favor alegando, en síntesis, que la demanda estaba prescrita. A esos efectos, argumentó que la incomparecencia del padre de Gil Enseñat constituyó un evento que no viciaba de nulidad radical las capitulaciones matrimoniales, <u>sino que meramente las hacía anulables</u>. A esos efectos, señaló que eran meramente anulables las capitulaciones de un menor en las que no concurrieran sus representantes legales, teniendo el documento validez hasta que no fuera impugnado. Cónsono con ello, señaló que siendo meramente anulables las capitulaciones cualquier acción de impugnación tenía que presentarse, conforme al Artículo 1253 del Código Civil, 31 L.P.R.A.§ 3512[6], dentro del término de cuatro años desde que Gil Enseñat advino a la mayoría de edad. En virtud de que Gil Enseñat había presentado la demanda fuera del

---

[6] El Artículo 1253 del Código Civil, ante, establece, en lo aquí pertinente, lo siguiente:

La acción de nulidad sólo durará cuatro (4) años.

Este tiempo empezará a correr:

…cuando se refiera a los contratos celebrados por los menores o incapacitados, desde que salieren de tutela.

antes mencionado término alegó que la causa de acción estaba prescrita.

Gil Enseñat presentó una moción solicitando se dictara sentencia sumaria a su favor. Señaló, nuevamente, que la incomparecencia de su padre producía la nulidad radical de las capitulaciones. Conforme a ello, alegó que si no se cumplía con el requisito de la concurrencia de ambos padres con patria potestad no había consentimiento, por lo cual el contrato no existía. A esos efectos, argumentó que toda vez que las capitulaciones eran radicalmente nulas no existía término para impugnarlas.

Luego de varios trámites e incidentes procesales, el tribunal de primera instancia emitió sentencia sumaria a favor de Marini Román. Concluyó que el consentimiento dado por la madre de Gil Enseñat era suficiente para completar la capacidad de la menor. Al fundamentar su determinación, el referido foro prestó especial atención al hecho de que los padres estaban separados por sentencia de divorcio y sólo la madre ostentaba la custodia de la menor.

El tribunal de instancia resolvió, además, que siendo las capitulaciones matrimoniales un contrato celebrado entre aquellos que han decidido unirse en matrimonio, le eran aplicables las normas generales de los contratos establecidas en el Código Civil. En virtud de lo anterior, señaló que los contratos otorgados por menores no emancipados ––pero que tienen discernimiento–– son contratos existentes, aunque estén viciados y se hallen

expuestos durante 4 años a la acción de anulabilidad o de impugnación. Así pues, concluyó que conforme lo dispone el Artículo 1253, 31 L.P.R.A. § 3512, dicho término de cuatro años comenzó a decursar desde que Gil Enseñat alcanzó la mayoría de edad. Expresó que un contrato otorgado por un menor de edad que tenga edad suficiente como para tener uso de razón y capacidad para discernir no es nulo, sino meramente anulable.

A tales efectos, determinó que las capitulaciones aquí en controversia eran meramente anulables, cuyo término para impugnación era de tan sólo cuatro (4) años. Entendió el referido foro que, como Gil Enseñat tenía 19 años al contraer matrimonio, tenía la suficiente capacidad para discernir y comprender la naturaleza de sus actos al momento en que suscribió la escritura de capitulaciones matrimoniales. Señaló que al ser anulables las capitulaciones Gil Enseñat tenía 4 años a partir de su mayoría de edad --es decir desde el 6 de marzo de 1997-- para impugnar, lo cual no hizo. Por último, determinó que toda vez que las partes se divorciaron por mutuo acuerdo y Gil Enseñat no cuestionó entonces las capitulaciones, ésta no podía ir en contra de sus propios actos. En virtud de lo anterior, declaró con lugar la moción de sentencia sumaria presentada por la parte demandada y en consecuencia desestimó con perjuicio la demanda.

Inconforme con tal determinación, Gil Enseñat acudió, mediante recurso de apelación, ante el entonces Tribunal

de Circuito de Apelaciones. Alegó, en síntesis, que erró el foro primario al determinar que eran válidas las capitulaciones toda vez que faltó el consentimiento de su padre. Argumentó que había errado el foro de instancia al aplicar la norma de los contratos celebrados por los menores para determinar la validez de las capitulaciones matrimoniales en este caso; al resolver que las normas generales establecidas en el Código Civil sobre los contratos le eran aplicables a las capitulaciones matrimoniales, en contravención a la disposición legal específica sobre las capitulaciones matrimoniales; al resolver que una menor de 19 años tenía la suficiente capacidad para discernir y comprender la naturaleza del contrato de capitulaciones matrimoniales; y al resolver que las capitulaciones matrimoniales eran anulables y que la menor otorgante tenía cuatro años a partir de su mayoría para impugnarlas.

Tras varios trámites procesales, y luego de celebrar una vista oral, el foro apelativo intermedio dictó sentencia <u>revocatoria</u> de la emitida por el Tribunal de Primera Instancia. Resolvió que la incomparecencia de un padre con patria potestad en el otorgamiento de las capitulaciones de su hija de 19 años, anulaba radicalmente el acto jurídico. Conforme a lo anterior, concluyó que era inválido el contrato sobre las capitulaciones matrimoniales entre las partes, por lo cual sus relaciones económicas se rigieron por el régimen ganancial. En virtud

de lo anterior, devolvió el caso al foro primario para la división de la comunidad de bienes existente entre las partes.

Insatisfecho con tal determinación, el 30 de septiembre de 2003 Marini Román acudió--vía *certiorari*-- ante este Tribunal. Adujo que incidió el foro apelativo intermedio al:

> …concluir que la incomparecencia del padre con patria potestad compartida por decreto judicial en la escritura de capitulaciones matrimoniales de su hija de 19 años de edad produce nulidad radical del negocio jurídico.

> …no concluir que la incomparecencia del padre con patria potestad compartida por decreto judicial en la escritura de capitulaciones matrimoniales de su hija de 19 años de edad sólo anulaba el negocio jurídico.

> …no concluir que la recurrida ratificó el negocio jurídico cuando advino a la mayoridad.

> …no concluir que la demanda estaba prescrita por haber expirado el plazo de la acción de anulabilidad de la recurrida.

<u>Expedimos el recurso</u>. Contando con la comparecencia de ambas partes y estando en posición de resolver el mismo, procedemos a así hacerlo. <u>Confirmamos</u>; veamos por qué.


I

Por estar íntimamente relacionados entre sí, analizamos y discutimos los señalamientos de error en conjunto. De entrada, nos corresponde determinar cuál es el tipo de ineficacia que produce la incomparecencia de

una de las personas designadas y autorizadas por el Artículo 1270 de nuestro Código Civil, ante, al otorgamiento de las capitulaciones matrimoniales de un menor de edad. Es decir, debemos resolver si unas capitulaciones matrimoniales otorgadas por un menor de edad, sin la concurrencia y firma de uno de sus padres con patria potestad, son radicalmente nulas o meramente anulables.

Como es sabido, nuestro ordenamiento jurídico permite que las personas que desean casarse seleccionen el régimen económico que habrá de regir su futuro matrimonio. En virtud de lo anterior, este Tribunal ha señalado que "los futuros cónyuges pueden pactar en las capitulaciones matrimoniales el régimen económico que entiendan procedente y conveniente". Maldonado v. Cruz Dávila, res. el 8 de enero de 2004, 2004 T.S.P.R. 1: véanse, además, Domínguez v. E.L.A., 137 D.P.R. 954, 959 (1995); Vilariño Martínez v. Registrador, 88 D.P.R. 288, 292 (1963).

A esos efectos, el Artículo 1267 del Código Civil, 31 L.P.R.A. § 3551, establece que "los que se unan en matrimonio podrán otorgar sus capitulaciones antes de celebrarlo, estipulando las condiciones de la sociedad conyugal relativa a sus bienes presentes y futuros". De igual forma, el referido artículo de ley establece que a falta de capitulaciones, o cuando éstas sean nulas o insuficientes, los cónyuges se casan bajo el régimen supletorio de la sociedad de gananciales. Maldonado v.

Cruz Dávila, ante; Vilariño Martínez v. Registrador, ante, a la pág. 292.

Es preciso señalar que a pesar de que las antes mencionadas capitulaciones "constituyen un contrato sujeto al régimen de libertad que impera en nuestro sistema de contratación, la autonomía de las partes no es absoluta". *Ab Intestato* Saldaña, *Ex parte*, 126 D.P.R. 640, 643 (1990): véanse, además, Maldonado v. Cruz Dávila, ante; Domínguez v. E.L.A., ante, a las págs. 959-960; Umpierre v. Torres Díaz, 114 D.P.R. 449, 459 (1983); Vilariño Martínez v. Registrador, ante, a la pág. 293. En virtud de lo anterior, los otorgantes de las capitulaciones no pueden estipular nada que sea contrario a las leyes o a las buenas costumbres, ni depresivo de la autoridad que respectivamente corresponda en la familia a los futuros cónyuges. Art. 1268 del Código Civil, 31 L.P.R.A. § 3552; *Ibid*.

En lo que respecta a las formas y solemnidades que nuestro ordenamiento jurídico exige para este tipo de contrato, el Artículo 1273 del Código Civil, 31 L.P.R.A. § 3557, establece, en lo aquí pertinente, que "las capitulaciones matrimoniales y las modificaciones que se hagan en ellas habrán de constar en escritura pública, otorgada antes de la celebración del matrimonio". Al respecto, este Tribunal ha señalado que la validez del contrato de capitulaciones depende de dos supuestos básicos: (1) que conste en escritura pública; y (2) que

hayan sido otorgadas antes de la celebración del matrimonio. Maldonado v. Cruz Dávila, ante. Es preciso destacar que los antes mencionados requisitos son supuestos generales que aplican al otorgamiento de todas las capitulaciones.

En cuanto al primero de estos supuestos se ha entendido que se trata de un requisito de forma *ad solemnitatem* del cual depende la existencia y validez misma de las capitulaciones. Maldonado v. Cruz Dávila, ante, citando a Jaime Santos Britz, Derecho Civil: Teoría y Práctica, Madrid, Ed. Revista de Derecho Privado, 1982, T. V., pág. 127. Así pues, las capitulaciones matrimoniales que no consten en escritura pública carecerán de validez y eficacia pues, según se ha entendido, estamos ante una condición para la existencia de la escritura y no ante un mero requisito de forma. *Ibid*, citando a J.M. Manresa y Navarro, Comentarios al Código Civil Español, 6ta. ed. rev., Madrid, Ed. Reus, 1969, T.IX, Vol. I, pág. 141.

Por otra parte, la exigencia de que las capitulaciones sean otorgadas antes de contraído el matrimonio es parte de una máxima que ha sido denominada como "la doctrina de inmutabilidad de las capitulaciones". La referida doctrina surge en virtud de las disposiciones del antes mencionado Artículo 1267, ante, y las del Artículo 1272 de nuestro Código Civil, 31 L.P.R.A. § 3556, el cual establece que luego de celebrado un matrimonio "no

se podrán alterar las capitulaciones otorgadas…" Maldonado v. Cruz Dávila, ante; Domínguez v. E.L.A., ante, a la pág. 961; Vilariño Martínez v. Registrador, ante, a la pág. 293; véase, además, Ruth Ortega-Vélez, Compendio de Derecho de Familia, EE.UU., 2000, Publicaciones JTS, Tomo I, pág. 256.

Este Tribunal ha reconocido que la antes mencionada doctrina, o prohibición de variar las capitulaciones, "ha caído en desuso y ha sido abolida en los más modernos códigos". Umpierre v. Torres Díaz, ante, a la pág. 457: véase, además, Domínguez v. E.L.A, ante, a la pág. 962. No obstante lo anterior, hemos destacado que es a nuestra Asamblea Legislativa a la que le corresponde modificar la referida situación. Toda vez que ––contrario a las nuevas tendencias en las jurisdicciones civilistas–– nuestra Legislatura no ha tomado acción para acoger el principio de mutabilidad, la antes mencionada prohibición continúa vigente en nuestro ordenamiento jurídico. *Ibid*.

Con respecto a las capitulaciones matrimoniales hemos establecido que son "de primordial importancia en el ámbito de la relación patrimonial del matrimonio, en la medida en que permite[n] regular los derechos de los esposos sobre sus bienes respectivos; los intereses de los hijos y de la familia; los intereses de terceros que contratan con uno u otro de los esposos, y en definitiva, el interés social del matrimonio". Maldonado v. Cruz

Dávila, ante, citando a Domínguez v. E.L.A., ante, a la pág. 960.

De tal magnitud es su importancia que nuestro Código Civil permite --con ciertos requisitos-- que hasta los menores de edad que vayan a casarse puedan establecer capitulaciones matrimoniales. Emilio Meléndez, Lecciones de Derecho de Familia, Editorial Universitaria, Universidad de Puerto Rico, 1era edición, Barcelona, España (1976) a la págs. 202-203.

A tales efectos, el Artículo 1270 de Código Civil, ante, específicamente faculta a los menores de edad a otorgar capitulaciones matrimoniales y establece los requisitos para la validez del referido otorgamiento. La referida disposición estatutaria establece que "[e]l menor, que con arreglo a la ley pueda casarse[7], podrá también otorgar sus capitulaciones matrimoniales; pero únicamente serán válidas si a su otorgamiento concurren las personas designadas en la misma ley para dar el consentimiento al menor a fin de contraer matrimonio". (Énfasis suplido).

Resulta importante enfatizar que la referida disposición estatutaria dispone en su segundo párrafo que

---

[7] Como norma general en nuestro ordenamiento, los menores que pueden contraer matrimonio --conforme al artículo 70 del Código Civil, 31 L.P.R.A. § 232-- son aquellos varones mayores de 18 años y las mujeres de 16 años que cuenten con el correspondiente permiso. En el presente caso, no está en controversia que Gil Enseñat estaba capacitada para contraer matrimonio.

"[e]n el caso de que las capitulaciones fuesen nulas <u>por carecer del concurso y firma de las personas referidas</u> y de ser válido el matrimonio con arreglo a la ley, se entenderá que el menor lo ha contraído bajo el régimen de la sociedad de gananciales". (Énfasis suplido).

Respecto a la disposición estatutaria antes mencionada, nos enfrentamos a, y contestamos, dos interrogantes. Primero, debemos determinar quienes son los sujetos llamados a concurrir al otorgamiento de las capitulaciones matrimoniales efectuadas por un menor. De otra parte, es preciso establecer cuáles son las consecuencias de la incomparecencia de alguna de estas personas designadas en ley. Veamos.

Como señaláramos anteriormente, conforme al referido Artículo 1270 del Código Civil, ante, las personas llamadas a concurrir al otorgamiento de las capitulaciones de un menor <u>son las mismas personas designadas por ley para brindar el consentimiento a los menores para contraer matrimonio</u>. A tales efectos, el artículo 74 del Código Civil de Puerto Rico, 31 L.P.R.A. § 242, establece como norma general, en lo aquí pertinente, que "[l]os menores de veintiún (21) años necesitan para contraer matrimonio <u>el permiso de las personas que los tengan bajo su patria potestad</u> o tutela…" Surge de lo anterior, <u>que los padres con patria potestad sobre sus hijos son las personas llamadas por ley a consentir al matrimonio de los mismos.</u>

Como es sabido, la patria potestad es el conjunto de deberes y facultades que tienen los padres respecto a la persona y los bienes de sus hijos menores de edad no emancipados. Chévere v. Levis, 150 D.P.R. 525, 537 (2000); Torres, Ex parte, 118 D.P.R. 469, pág. 474 (1987). Ésta es una de las instituciones legales más importantes en relación a los menores. Exposición de Motivos, Ley Núm. 99 del 2 de junio de 1976.

Ello así toda vez que, en virtud de esta institución, los padres con patria potestad tienen el derecho de tomar decisiones esenciales y primordiales en la vida de sus hijos menores de edad. Cónsono con lo anterior, este Tribunal ha señalado que son amplios los deberes y facultades que el ejercicio de la patria potestad impone sobre los padres. Entre éstos se encuentra, como indicamos anteriormente, el de consentir al matrimonio de sus hijos menores de edad no emancipados. Torres, Ex parte, ante, pág. 474.

Anteriormente nuestro ordenamiento establecía que la patria potestad correspondía, en primer término, al padre y sólo recaía sobre la madre en caso de la muerte de éste o en casos excepcionales. López v. Porrata Doria, res. el 4 de abril de 2002, 2002 T.S.P.R. 39; véanse, además, Sánchez Cruz v. Torres Figueroa, 123 D.P.R. 418, 424 (1989); C. Irrizary Yunqué, Responsabilidad Civil Extracontractual, 4 ta Ed. (2002), a la pág. 553.

No obstante lo anterior, en el año 1976 la Asamblea Legislativa aprobó varias leyes para dar a ambos padres iguales derechos y obligaciones sobre sus hijos menores de edad. Entre éstas se encuentra la Ley Núm. 99 de 2 de junio de 1976. En específico, esta pieza legislativa enmendó el Artículo 152 del Código Civil, 31 L.P.R.A. § 591, para equiparar el derecho de ambos progenitores a la patria potestad de sus hijos. Sánchez Cruz v. Torres Figueroa, 123 D.P.R. 418, 424 (1989). De esta forma, la Legislatura consideró que el bienestar del menor quedaba mucho más protegido si se requería el consentimiento de ambos padres para tomar decisiones importantes con relación al menor. Ello en virtud de que esto evitaba que, por capricho de uno sólo de los padres, pudiera perjudicarse el menor. Exposición de Motivos, Ley Núm. 99 del 2 de junio de 1976.

A raíz de lo anterior, el referido artículo de ley actualmente establece que, como norma general, la patria potestad sobre los hijos no emancipados recae conjuntamente sobre ambos padres. Chévere v. Levis, ante. Añade el referido artículo que, de forma excepcional, uno sólo de los padres podrá ejercer la patria potestad (1) cuando el otro haya muerto, se encuentre ausente o esté legalmente impedido; o (2) cuando sólo uno de éstos haya reconocido o adoptado al menor. Ibid.

De igual forma, en ese mismo año la Asamblea Legislativa aprobó la Ley Núm. 100 de 2 de junio de 1976,

a los fines de enmendar el Artículo 107 del Código Civil, 31 L.P.R.A. § 383[8]; ello con el propósito de que se eliminara todo lo relacionado a la culpabilidad de cualesquiera de los cónyuges al momento de adjudicar la patria potestad y custodia, estableciendo en su lugar como norma el bienestar y los mejores intereses del menor. Chévere v. Levis, ante, a la pág. 538, escolio 7; Sánchez Cruz v. Torres Figueroa, ante, a la pág. 424: Torres, Ex parte, ante, a la pág. 477; ello por razón de que, antes de la enmienda, en lo casos de divorcio, se le adjudicaba la patria potestad al cónyuge que resultara inocente. *Ibid*.

En virtud de la referida enmienda, actualmente, inclusive en casos de divorcio, este Tribunal ha determinado que ambos padres --como en el presente caso-- pueden mantener la patria potestad sobre el menor, aun cuando la custodia sólo recaiga sobre uno de los cónyuges, siempre que corresponda a los mejores intereses del menor.

---

[8] En específico, el Artículo 107, ante, dispone, en lo aquí pertinente, que:

> En todos los casos de divorcio los hijos menores serán puestos bajo el cuidado y la patria potestad del cónyuge que el Tribunal, en el ejercicio de su sana discreción, considere que los mejores intereses y bienestar del menor quedarán mejor servidos; pero el otro cónyuge tendrá derecho a continuar las relaciones de familia con sus hijos, en la manera y extensión que acuerde el Tribunal al dictar sentencia de divorcio, según los casos…

Torres, Ex parte, ante. Sánchez Cruz v. Torres Figueroa, ante, a la pág. 424; Torres, Ex parte, ante.

De particular pertinencia a la controversia ante nuestra consideración, resulta la aprobación de la Ley Núm. 1 del 27 de mayo de 1980. En virtud de la referida Ley la Asamblea Legislativa enmendó el antes mencionado Artículo 152, ante, para establecer expresamente que todo hospital público o privado aceptará el consentimiento de cualquiera de los padres con patria potestad sobre los hijos no emancipados en casos de tratamiento médico y operaciones de emergencia ordenadas por algún facultativo autorizado. Exposición de Motivos, Ley Núm. 1 de 27 de mayo de 1980.

Al aprobar el referido estatuto la Asamblea Legislativa expresamente estableció que toda vez que era compartida por ambos cónyuges, mientras se sostuviera el matrimonio y aún después del divorcio, resultaba deseable que se requiriera únicamente que uno de los padres con patria potestad tuviera que consentir a los tratamientos médicos antes señalados. Exposición de Motivos, Ley Núm. 1 de 27 de mayo de 1980.

En vista de lo anterior, no tenemos la menor duda que si el legislador hubiese tenido la intención de establecer que, en casos como el que hoy nos ocupa, bastara con la comparecencia de uno sólo de los padres con patria potestad sobre un menor emancipado así lo hubiese establecido como lo hizo en la antes mencionada situación.

No lo hizo. Al no sufrir alteración alguna el Artículo 1270, permanece inalterado el requisito de que las personas que tienen que consentir al matrimonio, es decir las personas con patria potestad sobre el menor, tengan que concurrir al otorgamiento de las capitulaciones.

En el presente caso, le correspondía a ambos progenitores de Gil Enseñat --quienes compartían la patria potestad sobre ella-- comparecer al otorgamiento de las capitulaciones matrimoniales de su hija. Ahora bien, lo anterior no dispone totalmente del caso ante nuestra consideración. Debemos determinar el tipo de nulidad que produce la ausencia del padre de Gil Enseñat al referido acto: a saber, si las capitulaciones son nulas o meramente anulables.

II

Alega, en síntesis, el peticionario Marini Román que unas capitulaciones otorgadas por un menor, sin el concurso de uno de sus padres con patria potestad, no son radicalmente nulas sino meramente anulables. A su entender la doctrina civilista española mayoritaria apoya la referida conclusión. No le asiste la razón.

Es preciso destacar que el Artículo 1270 de nuestro Código Civil, ante, proviene del antiguo Artículo 1.318 del Código Civil Español, el cual disponía exactamente lo

mismo que el Artículo 1270 nuestro.[9] <u>Domínguez</u> v. <u>E.L.A.</u>, ante, a la pág. 962.

El referido artículo español fue enmendado como parte de la reforma de leyes que regulan a las personas y la familia. En específico, fue en virtud de la Ley de 2 de mayo de 1975 que se abolió en España la inmutabilidad de las capitulaciones. <u>Domínguez</u> v. <u>E.L.A.</u>, ante, a la pág. 962; <u>Umpierre</u> v. <u>Torres Díaz</u>, ante, a la pág. 458. Véanse, a esos efectos, J. Castán Tobeñas, <u>Derecho Civil Español</u>, Común y Foral, Tomo V, Vol. I, 9ª. ed. (revisada por G. García Cantero y J. M. Castán Vázquez), Madrid, 1976, pág. 305; L. Díez Picazo y Antonio Gullón, <u>Sistema de Derecho Civil</u>, Volumen IV, Editorial Tecnos, Madrid España, 1978, a la pág 151; J. Santos Britz, <u>Derecho Civil, Teoría y Práctica</u>, Vol. V, Editorial Revista de Derecho Privado, Madrid,(1982), pág. 125.

Como consecuencia de la aprobación de la Ley del 13 de mayo de 1981, el Artículo 1.318 del Código Civil fue

---

[9] Es preciso destacar que el Código Español, a diferencia del nuestro, <u>no</u> fue modificado para establecer que la patria potestad sería compartida entre ambos cónyuges hasta que conforme a la reforma de familia fue enmendado. Es decir, específicamente los tratadistas jamás tuvieron ante sí la interrogante de cual sería el tipo de ineficacia que produciría la ausencia de uno de los padres con patria potestad sobre un menor de edad toda vez que conforme al ordenamiento jurídico español sólo podía recurrir una persona al otorgamiento de las capitulaciones matrimoniales otorgadas por un menor de edad; a saber, tratándose de hijos legítimos, tenía que concurrir al referido acto, en primer término el padre, faltando éste o hallándose impedido, en orden sucesivo a la madre, al abuelo paterno, al materno, a las abuelas paterna o materna y, en su defecto, al consejo de familia.

enmendado y convertido en el Artículo 1.329 del Código Civil Español. Este Artículo tiene la peculiaridad de que autoriza al menor de edad a otorgar capitulaciones matrimoniales en cualquier momento y otorgarlas sin la comparecencia de persona alguna si únicamente se limita a pactar en las mismas el régimen de separación o participación.[10]

Acorde con las antes mencionadas enmiendas la doctrina civilista española más moderna entiende que, ante la incomparecencia de una de las personas designadas en ley para concurrir al otorgamiento de las capitulaciones matrimoniales, no se debe hablar de nulidad, sino de anulabilidad. J. L. de los Mozos, *op. cit.*, a la pág. 50; Puig Brutau, <u>Fundamentos de Derecho Civil,</u> Tomo IV, 1967, Barcelona, Bosch, segunda ed., 1985, a la pág. 117.

Ahora bien, considerando que en nuestro ordenamiento jurídico <u>aún rige la doctrina de la inmutabilidad de las capitulaciones</u> haremos alusión <u>únicamente</u> a aquella doctrina que analiza el articulado español antes de aprobadas las mencionadas enmiendas.

### A

Como es sabido, en nuestro ordenamiento jurídico los menores no emancipados, como norma general, no tienen

---

[10] Específicamente el nuevo artículo 1.329 dispone en lo aquí pertinente que «el menor que con arreglo a la ley pueda casarse podrá otorgar capitulaciones matrimoniales antes o después de la boda, pero necesitará el concurso y consentimiento de sus padres o tutor, salvo que se limite a pactar el régimen de separación o participación».

capacidad para contratar. Sin embargo, el Artículo 1270 del Código Civil, ante, les permite otorgar capitulaciones matrimoniales. J. M. Manresa y Navarro, *op. cit.*, a la pág. 162. Ciertamente, esta autorización de la legislatura representa una excepción a la norma general antes mencionada. Artículo 1215 del Código Civil de Puerto Rico, 31 L.P.R.A. § 3402. J. M. Manresa y Navarro, Comentarios al Código Civil Español, Tomo IX, Reus, S.A., Madrid (1969), a la pág. 162; véase, además, J. L. de los Mozos, *op. cit.*, esc. 5, a la pág. 49.

Como bien expresa Castán Tobeñas, "el Derecho no puede exigir para el otorgamiento de capitulaciones matrimoniales la capacidad plena del mayor de edad, puesto que pudiendo el menor [a partir de ciertas edades] contraer matrimonio, sería absurdo se le privara del derecho a regular la organización económica de la familia que va a crear". J. Castán Tobeñas, Derecho Civil Español, Común y Foral, Madrid, 1960, 8ª. ed., Editorial Reus, Tomo V, Vol. I, pág. 308.

No obstante lo anterior, se ha señalado que "para hacer la excepción menos violenta, [el legislador] ha creído conveniente establecer un suplemento de capacidad, exigiendo para la validez de las capitulaciones del menor de edad la concurrencia de las personas mismas que han de dar su consentimiento para el matrimonio". J. Castán Tobeñas, *op. cit,* a la  pág. 308; véase, además, Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed.

Bosch, 1967, Tomo IV, Vol. 1, a la pág. 402. En igual sentido expresa Manresa y Navarro que "esa excepción no puede ser tan radical que consienta que los interesados menores de edad, por sí solos, estipulen las condiciones que a bien tengan en sus capitulaciones matrimoniales, se hagan mutuas donaciones, aun de bienes inmuebles, constituyan hipotecas y realicen otros actos trascendentales e irrevocables". J. M. Manresa y Navarro, *op. cit.*, a la pág. 163. Indudablemente, eso "[s]ería fiarlo todo a la inexperiencia, apasionamiento y falta de reflexión de los jóvenes esposos, que más tarde no podrían ya enmendar los yerros cometidos. J. M. Manresa y Navarro, *op. cit.*, a la pág. 163.

Es en virtud de lo anterior que se requiere la comparecencia de ciertas personas designadas en ley para el otorgamiento de las capitulaciones matrimoniales. Ahora bien, cuando concurren estas personas al otorgamiento de las capitulaciones, las mismas no lo hacen en concepto de parte sino para completar la capacidad de los verdaderos otorgantes, los cuales son siempre los futuros esposos, aun cuando sean menores de edad. J. L. de los Mozos, Comentarios al Código Civil Español y Compilaciones Forales, dirigidos por Manuel Albaladejo, Tomo XVIII, Vol. 1, Editorial Revista de Derecho Privado, Madrid (1978), a la pág. 48; véase, además, Ruth Ortega-Vélez, *op. cit.,* a las págs. 263-264. J. L. Lacruz Berdejo y Francisco de Asis Sancho Rebudilla, Derecho de Familia, Librería Bosch,

Barcelona, (1966) a la pág. 119. Es decir, son los menores de edad los otorgantes en el referido contrato. J. L. de los Mozos, Comentarios al Código Civil Español y Compilaciones Forales, dirigidos por Manuel Albaladejo, Tomo XVIII, Vol. 1, Editorial Revista de Derecho Privado, Madrid (1978), a la pág. 48: M. Peña Bernaldo de Quirós IX, Anuario de Derecho Civil, Tomo 9 (1956), a la pág. 310.

Esto es, en lugar de intervenir los padres con patria potestad "solamente representando a los menores, contratando por ellos y para ellos, intervienen, asisten o concurren con los mismos menores complementando su personalidad, y así, atendiendo a los deseos de los futuros esposos, les dan la forma más conveniente y adecuada, salvando con su experiencia los peligros que pudieran resultar". Q. M. Scaevola, Código Civil, Madrid, 1967, Tomo XXI, 2nda edición, pág. 208.

Puig Brutau señala que la capitulación es un acto personalísimo, aunque no lo declara expresamente ningún precepto porque "ello se deduce del hecho de concederse al menor capacidad para otorgar por sí los capítulos, excluyendo la sustitución por el representante legal, y en general de la naturaleza familiar de estos pactos y su accesoriedad al matrimonio". Puig Brutau, ante, a la pág. 400; J. M. Manresa y Navarro, op. cit., a la pág. 163.

Nos señala Puig Brutau que las capitulaciones otorgadas por los menores de edad tienen dos

características particulares; a saber, "pueden  prestar el consentimiento los menores aunque no estén emancipados, es decir, contratan ellos mismos y no por medio de sus representantes legales; y el complemento de su capacidad lo obtienen con la asistencia, no de estos representantes, sino de las indicadas personas". Puig Brutau, Fundamentos de Derecho Civil, ante, pág. 402.

Ahora bien, y como mencionamos anteriormente, el Artículo 1270 de nuestro Código Civil dispone que únicamente serán válidas las capitulaciones matrimoniales de un menor de edad si a su otorgamiento concurren las personas designadas en la misma ley para dar el consentimiento al menor a fin de contraer matrimonio. A su vez dispone que "[e]n el caso de que las capitulaciones fuesen nulas por carecer del concurso y firma de las personas referidas y de ser válido el matrimonio con arreglo a la ley, se entenderá que el menor lo ha contraído bajo el régimen de la sociedad de gananciales".

Por lo tanto, si no se cumple con el anterior requisito, del concurso y firma de las personas referidas, somos del criterio que las capitulaciones matrimoniales son nulas. Véase, a esos efectos, J. Castán Tobeñas, op. cit., a la pág. 231; J. M. Manresa y Navarro, op. cit., a las págs.169; F. Puig Peña, Tratado de Derecho Civil Español II, I-Teoría General del Matrimonio, Tomo II, Vol. I, Editorial Revista de Derecho Privado, Madrid (1953), pág. 259-260; Q. M. Scaevola, op. cit., a la pág. 212.

Es decir, "[c]omo inmediata consecuencia, el menor de edad que otorga sus capitulaciones matrimoniales sin la asistencia de las personas a que se refiere el Artículo 1270, ante, aun cuando después contraiga matrimonio con consentimiento de esas personas, <u>cae bajo el imperio de la última parte de este artículo, su matrimonio es válido, sus capitulaciones fueron nulas</u>". J. M. Manresa y Navarro, *op. cit.*, a las págs.169. (Énfasis suplido).

El requisito de la concurrencia de las antes mencionadas personas es esencial ya que "es el único que, como especial, exige el Código para la validez de las capitulaciones matrimoniales de un menor, y como en ellas pueden otorgarse verdaderos actos de enajenación o gravamen, aun de bienes inmuebles, no deja de ser una excepción importante en las reglas generales de la contratación". J. M. Manresa y Navarro, *op. cit.*, a la pág. 165. Acorde con lo anterior, --según expresa Manresa y Navarro-- "si las personas a quienes corresponde no concurrieron ni firmaron en las capitulaciones matrimoniales, <u>éstas no tienen fuerza alguna. La ley supone que nada se ha pactado, y el matrimonio se entiende contraído bajo el régimen de la sociedad de gananciales</u>". J. M. Manresa y Navarro, *op. cit.*, a la pág. 171. (Énfasis suplido).

Por lo tanto, el referido contrato es uno "inexistente, cuya inexistencia es consecuencia natural de la nulidad del acto; no se trata de una pura formalidad

exigida por la ley, se trata de un requisito esencial sin el cual, no media verdadero consentimiento". J. M. Manresa y Navarro, *op. cit.*, a la págs. 172-173; véase, además, Q. M. Scaevola, *op. cit.*, a la pág. 212.

Sobre este particular se ha pronunciado, de igual forma, el Tribunal Supremo de España. S. 1 de julio de 1995. El referido foro ha establecido que la falta del concurso de las personas designadas por la ley para dar el consentimiento al menor a fin de contraer matrimonio, determina la «nulidad absoluta», la «inexistencia» de las capitulaciones matrimoniales que los cónyuges intentaron llevar a cabo. Manuel Peña Bernaldo de Quirós IX, Anuario de Derecho Civil, Tomo 9 (1956), a las págs. 305-306; véanse, además, L. Díez-Picazo, Estudios sobre la Jurisprudencia Civil, II, Editorial Tecnos, Madrid 1969, a la pág. 339; F. Puig Peña, Compendio de Derecho Civil Español, 1976, (Vol. V), Edición Pirámide, S. A., Madrid, tercera edición, pág. 131.; J. Santos Britz, Derecho Civil, Teoría y Práctica, Vol. V, Editorial Revista de Derecho Privado, Madrid, (1982), a la pág. 127.

El peticionario entiende --al igual que lo hizo el foro primario-- que al presente caso aplican las normas generales de los contratos con respecto a los vicios de consentimiento por razón de minoridad. Ello con el claro propósito de que establezcamos que un vicio en el consentimiento en un contrato por minoridad --conforme a las circunstancias particulares del presente caso-- hace

que el contrato sea meramente anulable, con un término de impugnación de cuatro años desde que el menor de edad llega a la mayoridad. No nos convence.

Como vimos, a través del Artículo 1270, ante, el legislador específicamente estableció, para las capitulaciones matrimoniales otorgadas por menores, una excepción a la norma general de los contratos; esto es, el legislador estableció el requisito de la concurrencia al acto de unas personas en específico, sin las cuales el documento jurídico no tendría validez.

En virtud de todo lo anteriormente expuesto, resolvemos que no fueron válidas las capitulaciones otorgadas en el presente caso, toda vez que el padre de Gil Enseñat no prestó su consentimiento a las mismas. Conforme a lo anterior, siendo las capitulaciones radicalmente nulas, las mismas nunca tuvieron vida jurídica. En consecuencia, nunca existió término para impugnar su validez. Siendo esto así la acción presentada por Gil Enseñat no está prescrita toda vez que lo nulo nunca tuvo vida jurídica por lo cual es posible en cualquier momento decretar la nulidad del contrato. Ello en virtud de que "en los casos de nulidad absoluta, la acción podrá interponerse por cualquier interesado y notoriamente por los acreedores de los cónyuges, quedando excluida la confirmación o convalidación del negocio nulo, y asimismo, en principio, la prescripción de la acción". J.L. Lacruz Berdejo, *op. cit.*, a la pág. 129.

Toda vez que no existió un contrato de capitulaciones matrimoniales, el matrimonio de Gil Enseñat y Marini Román se rigió por el régimen supletorio de la sociedad legal de gananciales. Conforme a ello, aun subsiste una comunidad de bienes que tiene que ser dividida[11].

### III

Por los fundamentos antes expuestos, procede dictar Sentencia <u>confirmatoria</u> de la emitida en el presente caso por el Tribunal de Apelaciones y, en consecuencia, devolver el caso al Tribunal de Primera Instancia para la continuación de los procedimientos consistentes con lo aquí resuelto.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[11] Vale la pena destacar que todo notario tiene la responsabilidad de cerciorarse en el otorgamiento de unas capitulaciones matrimoniales en el cual uno o ambos de los otorgantes es un menor de edad, de cuales son las personas que ostenta la patria potestad sobre ese menor. A tales efectos, el notario tiene que verificar si los padres comparten la patria potestad sobre el menor aun cuando estén divorciados. Si ese es el caso, y no están presente ambos padres, entonces el notario no podrá efectuar la referida escritura so pena de incurrir en una violación a sus deberes como notario.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Brenda Gil Enseñat

    Demandante-recurrida

        vs.                CC-2003-773     CERTIORARI

Orlando Marini Román

    Demandado-peticionario

SENTENCIA

San Juan, Puerto Rico, a 18 de abril de 2006

      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Apelaciones y, en consecuencia, se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Mayagüez, para la continuación de los procedimientos consistentes con lo aquí resuelto.

      Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurrió en el resultado sin opinión escrita. El Juez Asociado señor Fuster Berlingeri disintió sin opinión escrita.

                        Aida Ileana Oquendo Graulau
                      Secretaria del Tribunal Supremo