FRANK VILARIÑO MARTÍNEZ, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE PONCE, recurrido.

*Número:* G-62-2 *Resuelto:* 6 de mayo de 1963

*P. Álvarez Leandri,* abogado del recurrente; el Registrador recurrido compareció por escrito.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

El Juez Asociado Señor Ramírez Bages emitió la opinión del Tribunal.

El señor Frank Vilariño Martínez, casado con doña Adela Rull Moratalla, presentó en el Registro de la Propiedad de Ponce una escritura por virtud de la cual compró una finca urbana, y "para que dicho comprador la posea, goce, use y disfrute . . . como su único y legítimo dueño, sin limitación alguna." Se acompañó como complementaria, copia certificada de la escritura Núm. 46 de 26 de abril de 1960, otorgada ante el notario Práxedes Alvarez Leandri, por virtud de la cual se protocolizó la escritura Núm. 1030, otorgada por los referidos esposos en Madrid, España, ante el notario Manuel Amorós Gonzálbez sobre capitulaciones matrimoniales. Las cláusulas tercera y cuarta de este otorgamiento disponen que:

"Tercera: Los comparecientes han convenido que el capital aportado por Don Frank Vilariño se considere como privativo suyo durante su matrimonio con Doña Adela Rull y sujeto a su exclusiva administración, así como también los bienes muebles e inmuebles y derechos reales y personales, pudiendo transmitirlos, enajenarlos, venderlos, traspasarlos, permutarlos y gravarlos sin limitación alguna y sin el consentimiento de su esposa Doña Adela Rull.

Cuarta: Asimismo han convenido también que Doña Adela Rull tendrá la libre administración de sus bienes propios y podrá disponer de ellos, sin intervención de su esposo Don Frank Vilariño, pudiendo ella realizar toda clase de operaciones sin licencia marital y desde ahora; es también convenido que Doña Adela Rull podrá adquirir toda clase de bienes muebles e inmuebles, derechos reales y personales y también transmitirlos, enajenarlos, venderlos, traspasarlos, permutarlos o gravarlos con los pactos y condiciones y para los fines y propósitos y por las causas y conceptos que ella determine y disponga, sin limitación alguna,

sin necesidad del consentimiento de su esposo don Frank Vilariño."

Inscribió el Registrador dicha operación "con el defecto subsanable de no acreditarse el carácter privativo de la propiedad que se adquiere, ya que de la escritura de capitulaciones matrimoniales no se desprende el régimen a que han de estar sometidos los bienes que se adquieran durante el matrimonio y tampoco se acredita el carácter privativo del dinero objeto de la compra."

Los referidos esposos otorgaron ante el notario Alvarez Leandri la escritura Núm. 29 de 13 de abril de 1961 con el propósito de aclarar la de capitulaciones matrimoniales a que hemos hecho referencia previamente, y a esos fines, en el párrafo cuarto de la mencionada escritura Núm. 29, expusieron lo que sigue:

"CUARTO: Que los comparecientes desean aclarar expresamente, ya que esa fué la intención y el propósito de ellos al otorgar sus capitulaciones matrimoniales, que Don Frank Vilariño Martínez podría adquirir y también trasmitir, enajenar, vender, traspasar, permutar o gravar, después de su matrimonio, toda clase de bienes muebles e inmuebles, derechos reales y personales, sin limitación alguna, y sin el consentimiento de su cónyuge, al igual que lo hace y lo ha hecho la otra compareciente, Doña Adela Rull Moratalla."

Copia certificada de esta última escritura, acompañada de là instancia al efecto fue presentada en el referido Registro con el propósito de subsanar el defecto apuntado por el Registrador, pero éste denegó la subsanación solicitada "porque esta escritura no subsana de por sí el defecto consignado y porque la misma resulta contraria a las disposiciones establecidas en el Título tercero, Capítulo primero de nuestro Código Civil, específicamente los Artículos 1267, 1271, 1272, 1273 y 1274 del mismo."

El recurrente le imputa al Registrador la comisión de dos errores que, en síntesis, consisten en haber consignado (1) que no se acreditó el carácter privativo de la propiedad ad-

quirida mediante la escritura de capitulaciones matrimoniales y (2) que la escritura aclaratoria de esta última es contraria a las disposiciones del Código Civil arriba mencionadas.

■ Convenimos con el Registrador que habiendo el recurrente en efecto consentido a lo expuesto en su primera nota denegatoria en la que se anotó el defecto subsanable en cuestión, debemos limitarnos a examinar y resolver si se podía o no subsanar el defecto mediante la referida escritura por virtud de la cual se propusieron los esposos aclarar sus capitulaciones matrimoniales anteriores. *Echavarría et al.* v. *El Registrador*, 24 D.P.R. 87 (1916) ; *Brac* v. *Registrador*, 23 D.P.R. 749 (1916).

Arguye el recurrente que hubo una omisión en la cláusula tercera de la referida escritura sobre capitulaciones matrimoniales con respecto a los bienes que adquiriera el recurrente durante el matrimonio, que se cubrió en la cláusula cuarta con respecto a los bienes que adquiriera la esposa durante dicho estado; que si se otorgó la escritura sobre capitulaciones matrimoniales fue con la intención y el propósito de que hubiera separación de bienes tanto de los que aportaban al matrimonio como de los que se adquirieran por él o por ella durante dicho matrimonio; y que en tal virtud procedía que se aclarase esta situación como en efecto se hizo por medio de la escritura Núm. 29. No tiene razón el recurrente.

■ Dispone el Código Civil vigente que los que se unan en matrimonio podrán otorgar sus capitulaciones *antes de celebrarlo*, estipulando las condiciones de la sociedad conyugal relativa a los bienes presentes y futuros sin otras limitaciones que las que señala el título correspondiente del código (Código Civil, Art. 1267—31 L.P.R.A. sec. 3551). *"Para que sea válida cualquiera alteración que se haga en las capitulaciones matrimoniales, deberá tener lugar antes de celebrarse el matrimonio . . ."* Código Civil, Art. 1271—31 L.P.R.A. sec. 3555. *"Después de celebrado el matrimonio no se podrán alterar las capitulaciones otorgadas antes,* ya se trate de

bienes presentes, ya de bienes futuros." Código Civil, Art. 1272—31 L.P.R.A. sec. 3556. (Énfasis nuestro.)

 Consideremos primeramente el alcance de estos preceptos estatutarios. La razón de exigir, como requisito esencial, que el contrato sobre bienes en ocasión del matrimonio se otorgue antes de la celebración de éste, radica en la necesidad, primero de que los interesados estén en condiciones de prestar libremente su consentimiento para tal otorgamiento; y segundo que los terceros puedan conocer el régimen adoptado y las estipulaciones convenidas partiendo de una época fija, después de la cual no puede haber alteración. Sería inútil el precepto del Art. 1267 del Código Civil si los cónyuges aunque no pudieran otorgar sus capitulaciones matrimoniales después de contraído el matrimonio pudiesen cambiarlas, alterarlas o modificarlas en cualquier sentido. Cf. Manresa, *Comentarios al Código Civil Español*, 5ta. ed., tomo IX, págs. 144–145; Castán, *Derecho Civil Español, Común y Foral*, 7ma. ed. tomo V, vol. 1, págs. 189–190. Toda vez que a falta de capitulaciones matrimoniales se entenderá el matrimonio contraído bajo el régimen de la sociedad legal de bienes gananciales, es obvio que las disposiciones de aquéllas deben ser claras y precisas y a esos efectos deben interpretarse estrictamente en todo lo que afecten al régimen de la referida sociedad. *García* v. *Font*, 6 D.P.R. 121 (1904); cf. Manresa, cit. supra, pág. 101. "Si existe contrato, a él han de amoldarse los cónyuges y los terceros; no cabe después del matrimonio cambio ni modificación alguna, o, lo que es lo mismo, no pueden esos cambios tener eficacia, pues las capitulaciones han de subsistir tales como fueron hechas antes del matrimonio." Manresa, cit. supra, págs. 148–149.

 Con respecto al significado del término *alteración*, a que se refieren los Arts. 1271 y 1272 del Código Civil, informa Manresa, cit. supra, págs. 147 y 153, que "Alterar es cambiar, modificar en su esencia o en sus detalles o circunstancias alguna cosa o acto"; no obstante, cabe durante

el matrimonio una concesión entre esposos, propia de las capitulaciones matrimoniales, si en realidad no envuelve alteración. Por ejemplo "aquellas convenciones que sin producir novación en las relaciones existentes, tienden a garantizarlas mejor o asegurar la observancia de las obligaciones contraídas." No existe alteración "en el hecho de hacer constar la entrega de bienes prometidos o asegurar con prenda o hipoteca esa entrega; en aceptar herencias, legados o donaciones . . .; *en la simple interpretación racional de cláusulas legalmente estipuladas;* y en los actos de disposición o ejercicio por los cónyuges de los derechos que les fueron concedidos." Manresa, cit. supra, págs. 153–154 y 148. (Énfasis nuestro.)

Scaevola asume una actitud aún más restrictiva que Manresa en cuanto al alcance del término *alteración.* Señala que los tratadistas distinguen, al efecto, entre cláusulas adicionales *explicativas e interpretativas.* A su juicio todas caen bajo la esfera general de prohibición que revela la frase *cualquiera alteración.* En cuanto a las últimas dos, no son los otorgantes los llamados en casos de conflicto a interpretar las capitulaciones, pues esa facultad se halla reservada al criterio judicial cuando es requerido en forma para dar solución a intereses y derechos encontrados. De suerte que ni aún la circunstancia de la armonía y conformidad entre los otorgantes de las capitulaciones matrimoniales los autoriza para alterarlas o modificarlas una vez celebrado el matrimonio. Scaevola, *Código Civil,* tomo XXI, pág. 235.

Examinando las cláusulas tercera y cuarta de las capitulaciones matrimoniales, a la luz de la doctrina expuesta, llegamos a la conclusión de que dichas cláusulas no son susceptibles de la referida "aclaración". En otras palabras, resolvemos que el párrafo Cuarto de la escritura Núm. 29, previamente transcrito, constituye una *alteración* de la cláusula tercera de las capitulaciones y por lo tanto es improcedente, según lo determina el Registrador. Siendo así, es

innecesario resolver, para los efectos de disponer de este recurso, si unas capitulaciones matrimoniales son susceptibles de aclaración o interpretación después del matrimonio de sus otorgantes.

La cláusula tercera antes mencionada de hecho es una mera repetición de la situación jurídica que impera en ausencia de pacto en contrario, efectivo y válido conforme a derecho. Resulta por lo tanto innecesaria e inútil en unas capitulaciones matrimoniales. En contraste, la cláusula cuarta contiene una estipulación en relación con la esposa no incluida en la tercera con respecto al esposo, por virtud de la cual la esposa puede adquirir toda clase de bienes muebles e inmuebles, derechos reales y personales y también disponer de ellos por venta, enajenación, traspaso, permuta o gravarlos, bajo los pactos y condiciones, para los fines y propósitos, y por las causas y conceptos que ella determine, sin limitación y sin el consentimiento de su esposo.

Esta ausencia de autoridad en cuanto al marido a quien se deja sujeto a todo el rigor de la sociedad de bienes gananciales, modificándose ésta en lo que respecta a la esposa, podrá aparecer poco usual y constituir para el recurrente un caso anómalo. Quizás la intención de las partes fue, como indica el recurrente, que los cónyuges tuviesen igual autoridad con respecto a bienes adquiridos por cada uno de ellos durante el matrimonio. Pero tal intención no se plasmó en realidad en las capitulaciones matrimoniales. Ciertamente esa intención no se puede hacer efectiva por la exclusiva voluntad de los cónyuges durante el matrimonio pretendiendo realizar para lograr ese propósito, lo que resulta ser en derecho una "alteración" sustancial del contrato sobre bienes con ocasión del matrimonio. Por lo tanto, el Registrador no podía tomar razón de la misma en ausencia de una determinación judicial específica al efecto. Dada la amplia libertad de contratación provista por el Código Civil en materia de capitulaciones matrimoniales al extremo de poder modificarse y hasta pres-

296

cindirse por ese medio del régimen de la sociedad legal de bienes gananciales, Castán, cit. supra, págs. 186–187; Puig Peña, *Tratado de Derecho Civil Español* (1953), tomo II, vol. 1, pág. 244, resulta difícil entender que la omisión de concederle facultades al marido por la cláusula tercera con la amplitud con que se le concedió a la mujer por la cláusula cuarta de dichas capitulaciones, se debió a una omisión involuntaria o a que no se llevó a efecto la verdadera intención de las partes. De todos modos, como antes dijimos, esta situación no es susceptible de corrección en la forma propuesta por el recurrente.

*La nota recurrida será confirmada.*