EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Blanca I. Guadalupe Solís<br><br>Demandante-Recurrida<br><br>v.<br><br>Osvaldo González Durieux<br><br>Demandado-Peticionario | Certiorari<br><br>2007 TSPR 215<br><br>172 DPR \_\_\_\_ |

Número del Caso: CC-2007-213

Fecha: 10 de diciembre de 2007

Tribunal de Apelaciones:

       Región Judicial de Fajardo

Juez Ponente:

       Hon. Carlos Rodríguez Muñiz

Abogado de la Parte Peticionaria:

       Lcdo. Jaime Rodríguez Rivera

Abogado de la Parte Recurrida:

       Lcdo. Víctor M. Rivera Torres

Materia: Apelación Civil

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Blanca I. Guadalupe Solís

   Demandante-Recurrida

       v.                      CC-2007-213    Certiorari

Osvaldo González Durieux

   Demandado-Peticionario

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 10 de diciembre de 2007.

A los fines de determinar el régimen económico seleccionado para regir el matrimonio entre el Sr. Osvaldo González Durieux y la Sra. Blanca Guadalupe Solís, debemos interpretar las capitulaciones matrimoniales que éstos otorgaron antes de contraer nupcias. En particular, nos corresponde resolver si el Tribunal de Apelaciones erró al confirmar la sentencia parcial emitida por el foro de instancia mediante la cual concluyó que la pareja contrajo matrimonio bajo el régimen clásico de la sociedad legal de bienes gananciales. Por entender que dicho régimen no rige todos los intereses pecuniarios de la sociedad conyugal de la

referida pareja y que, por el contrario constituye un régimen económico mixto que combina elementos de la sociedad legal de bienes gananciales y del régimen de la separación de bienes, revocamos el dictamen recurrido.

I.

El 6 de mayo de 1993, días antes de contraer nupcias, el señor González Durieux y la señora Guadalupe Solís acudieron a la oficina de la Notario Carmen Astacio Caraballo con el propósito de otorgar una escritura de capitulaciones matrimoniales. A esos fines, mediante la Escritura Número 8 de 6 de mayo de 1993 se expuso, en lo pertinente:

> **PRIMERO:** Que es la intención de los comparecientes contraer matrimonio entre s[í] y que con motivo de dichas nupcias desean otorgar las siguientes capitulaciones matrimoniales.

> **SEGUNDO:** Que los comparecientes desean mantener separadamente la propiedad y administración de todos sus respectivos bienes y futuros.

> **TERCERO:** Que los comparecientes estipulan que su matrimonio no estaría sujeto al r[é]gimen de la sociedad legal de gananciales provista en el Código Civil de Puerto Rico, ni sus bienes presentes o futuros.

Además, en el "OTORGAMIENTO" de la susodicha escritura se estipuló, entre otras cosas, que ambos cónyuges tendrían "la libre administración de sus respectivos bienes propios y podr[ían] disponer de ellos sin intervención, limitación ni necesidad de consentimiento alguno". Sin embargo, tras la aceptación,

advertencias y lectura de las capitulaciones matrimoniales, los otorgantes decidieron incluir la cláusula que se reproduce a continuación:

> EN ESTE ACTO, los comparecientes desean añadir que en lo sucesivo, cualesquiera bienes muebles o inmuebles que puedan adquirir las partes, luego de celebrado el matrimonio, se regirá por el régimen de la sociedad legal de gananciales.

Incluida la cláusula antes citada, y manteniendo inalteradas las disposiciones previamente redactadas, los otorgantes firmaron la escritura y procedieron a celebrar su matrimonio el 9 de marzo de 1993.

Transcurridos diez años desde la celebración del matrimonio, el señor González Durieux presentó una demanda de divorcio por la causal de trato cruel.[1] Mientras dicho proceso se encontraba pendiente de adjudicación, la señora Guadalupe Solís entabló una demanda contra su cónyuge mediante la cual alegó que, conforme a las capitulaciones matrimoniales otorgadas por las partes, la sociedad legal de gananciales era el régimen económico que gobernaba el matrimonio entre ambos. Partiendo de esta aseveración, indicó que la referida sociedad había generado cuantiosos ingresos cuya cantidad desconocía por razón de que siempre estuvieron bajo la absoluta y exclusiva administración del señor González Durieux. En vista de ello, solicitó la co-administración de los bienes gananciales, así como otros

---

[1] Del expediente surge que esta demanda eventualmente se desestimó por desistimiento.

remedios preventivos, hasta tanto se realizara la división y liquidación correspondiente.

El señor González Durieux se opuso a dicha solicitud aduciendo que la demanda estaba predicada en la premisa falsa de que entre las partes existía una sociedad legal de gananciales. Por consiguiente, solicitó la desestimación de la reclamación bajo el fundamento de que las capitulaciones en controversia habían consagrado una total separación de bienes presentes y futuros.

En atención a la controversia relacionada con el régimen económico consagrado en las capitulaciones matrimoniales, el tribunal de instancia celebró una vista en los méritos para dilucidar la intención de las partes al momento de otorgarlas. En la vista, dicho foro recibió los testimonios del señor González Durieux, la señora Guadalupe Solís y la Lcda. Astacio Caraballo, Notario que autorizó la escritura.

Examinada la prueba, el foro de instancia dictó una sentencia parcial mediante la cual resolvió que al introducir la última cláusula en las capitulaciones matrimoniales, el señor González Durieux y la señora Guadalupe Solís seleccionaron el régimen económico de la sociedad legal de gananciales para regir su matrimonio. Dicho foro entendió, además, que de ese régimen no se excluyeron los frutos civiles, naturales o industriales que generaran los bienes privativos de cualquiera de las partes, y que tampoco se estableció condición o limitación alguna sobre los efectos o incrementos en

valor que tales bienes tuvieran durante la vigencia del matrimonio.

En virtud de lo anterior, el tribunal de instancia le reconoció un derecho a la señora Guadalupe Solís a participar en todos los bienes adquiridos durante el matrimonio, aun cuando hubieran provenido de los bienes privativos del señor González Durieux. Entre esos bienes, dicho foro consideró de naturaleza ganancial las ganancias no distribuidas de la corporación Vieques Air Link, de la cual el señor González Durieux es presidente y único accionista desde antes de haberse casado.[2]

Insatisfecho con el dictamen, el señor González Durieux recurrió ante el Tribunal de Apelaciones y adujo que el foro de instancia incidió al apreciar erróneamente la prueba desfilada en la vista y resolver que entre las partes existía una sociedad de gananciales para todos los fines prácticos. Por entender que la adopción de la última cláusula de las capitulaciones tuvo el efecto de establecer el régimen de la sociedad de bienes gananciales, el foro apelativo confirmó el dictamen recurrido.

Aún inconforme, el señor González Durieux acude ante nos. Específicamente plantea que se debió interpretar que el lenguaje añadido *a posteriori* en las capitulaciones

---

[2] Posteriormente, el tribunal enmendó esa sentencia para ordenar que un contador levantara el inventario de los bienes y rindiera el informe correspondiente en aras de salvaguardar el derecho de la señora Guadalupe Solís a la co-administración de los bienes gananciales y evitar que éstos se dispusieran en perjuicio de sus derechos.

matrimoniales tuvo el limitado efecto de mantener un "régimen cuasi ganancial" bajo el cual "en lo sucesivo cualesquiera muebles e inmuebles que puedan adquirir las partes luego de celebrado el matrimonio se regirá por el régimen de la sociedad legal de gananciales". A esos efectos, el señor González Durieux arguye que la intención de las partes fue la separación de los bienes adquiridos previo al matrimonio, excluyendo también del carácter ganancial pactado con respecto a los bienes que se adquirieran durante el matrimonio los frutos, rentas e incrementos en valor o plusvalía de los bienes privativos.

Expedido el auto el 27 de abril de 2007, la señora Guadalupe Solís compareció ante nos para presentar su oposición al mismo. Con el beneficio de la comparecencia de ambas partes, resolvemos.

II.

Sabido es que nuestro ordenamiento jurídico permite que las parejas que deseen contraer nupcias tengan la opción de seleccionar, conforme entiendan conveniente, el régimen económico que habrá de regir su futuro matrimonio. A esos fines, antes de contraer nupcias los futuros cónyuges pueden otorgar capitulaciones matrimoniales para reglamentar los intereses pecuniarios que surgen de dicha relación o establecer las condiciones de la sociedad conyugal relativas a los bienes presentes y futuros o, incluso, a aspectos no patrimoniales. *Véase* Artículo 1267 del Código Civil, 31 L.P.R.A. sec. 3551;

Gil Enseñat v. Marini Román, res. el 18 de abril de 2006, 2006 TSPR 59; Maldonado v. Cruz Dávila, res. el 8 de enero de 2004, 2004 TSPR 1.

Dado que las capitulaciones matrimoniales constituyen contratos, en su preparación rige el principio de libertad de contratación. Este principio reconoce la autonomía de los contratantes y permite que éstos establezcan toda clase de pactos, cláusulas y condiciones. *Véase* Artículo 1207 del Código Civil, 31 L.P.R.A. sec. 3372; Gil Enseñat v. Marini Román, *supra*. Dicha voluntad contractual, aunque no es absoluta, tiene como único límite el no poder estipular nada que contravenga las leyes, la moral, el orden público, ni los fines del matrimonio. *Véase* Maldonado v. Cruz Dávila, *supra;* S.L.G. Irizarry v. S.L.G. García, 155 D.P.R. 713 (2001); Umpierre v. Torres Díaz, 114 D.P.R. 449 (1983).

En efecto, el contrato de capitulaciones matrimoniales permite "regular los **derechos de los esposos sobre sus bienes respectivos**; los derechos sobre las ganancias realizadas por ellos durante su unión; los intereses de los hijos y de la familia; los intereses de los terceros que contratan con uno u otro de los esposos, y, en definitiva, el interés económico y social" del matrimonio. (*Énfasis nuestro*) Maldonado v. Cruz Dávila, *supra;* Gil Enseñat v. Marini Román, *supra;* Domínguez Maldonado v. E.L.A., 137 D.P.R. 954 (1995).

Al ejercer dicha facultad, los futuros cónyuges pueden optar por diversos regímenes económicos

reconocidos por nuestro ordenamiento jurídico, tales como: (a) la total separación de bienes; (b) la separación de bienes, pero con una participación en las ganancias; (c) la sociedad legal de gananciales; (d) renunciar al régimen legal de gananciales; o **(e) cualquier otro régimen que combine estas posibilidades**, siempre que no infrinja la ley, la moral o las buenas costumbres. Domínguez Maldonado v. E.L.A., *supra*; Umpierre v. Torres Díaz, *supra*.

Cabe recordar que para contraer matrimonio bajo el régimen de la sociedad legal de gananciales "basta con guardar silencio y no estipular nada o estipularlo expresamente." Maldonado v. Cruz Dávila, *supra*. Ello en vista de que la ley establece que dicho régimen suple la falta de capitulaciones o la falta de validez o eficacia de las que en efecto se otorguen. *Véase* Artículo 1267 del Código Civil, *supra*.

Precisamente por razón de que la falta de capitulaciones matrimoniales implica que el matrimonio se contrae bajo el régimen de la sociedad legal de gananciales, hemos sostenido que las estipulaciones recogidas en el contrato de capitulaciones deben ser claras y precisas. A su vez, deben interpretarse estrictamente en todo lo que afecten al régimen económico matrimonial. Vilariño Martínez v. Registrador, 88 D.P.R. 288 (1963).

Sin embargo, en ocasiones la escritura de capitulaciones matrimoniales -como contrato al fin-

requiere un ejercicio de interpretación. Cuando ello sucede, "no son los otorgantes los llamados en casos de conflicto a interpretar las capitulaciones, pues esa facultad se halla reservada al criterio judicial cuando es requerido en forma para dar solución a intereses y derechos encontrados." *Id.* Ante ese tipo de controversia, los tribunales deberán ejercer su facultad interpretativa conforme a las normas de hermenéutica contractual dispuestas en el Código Civil.

De estas normas sobre interpretación, hemos reiterado que cuando los términos de un contrato son claros y no dejan duda alguna sobre la intención de las partes, se utilizará el sentido literal de sus cláusulas. Artículo 1233 del Código Civil, 31 L.P.R.A. sec. 3471; Trinidad García v. Chade, 153 D.P.R. 280 (2001). Sin embargo, en ocasiones no es posible determinar la voluntad de los contratantes mediante la mera lectura literal de las cláusulas contractuales. S.L.G. Irizarry v. S.L.G. García, *supra.* En tales casos, si alguna cláusula admite diversos sentidos, deberá entenderse en el más adecuado para que produzca efecto. Artículo 1236 del Código Civil, 31 L.P.R.A. sec. 3474.

Asimismo, cabe recordar que si bien hay que considerar la intención de las partes para interpretar los contratos, la interpretación que se realice tiene que ser cónsona con el principio de la buena fe y no puede llevar a resultados incorrectos, absurdos e injustos. S.L.G. Irizarry v. S.L.G. García, *supra;* Municipio de

<u>Mayagüez v. Lebrón</u>, res. el 21 de abril de 2006, 2006 TSPR 70. A tales efectos, las cláusulas de un contrato deberán interpretarse de manera integral y no aisladamente, buscando su verdadero sentido y atendiendo a la interpretación de unas cláusulas con relación a otras. *Véase* Artículo 1237 del Código Civil, 31 L.P.R.A. sec. 3475; <u>CNA Casualty of P.R. v. Torres Díaz</u>, 141 D.P.R. 27 (1996); <u>Cervecería Corona v. Commonwealth Ins. Co.</u>, 115 D.P.R. 345 (1984).

## III.

A la luz de los preceptos antes expuestos, debemos examinar el contrato de capitulaciones matrimoniales ante nuestra consideración en aras de determinar el régimen económico que el señor González Durieux y la señora Guadalupe Solís seleccionaron para regir los intereses pecuniarios de la sociedad conyugal compuesta por ambos.

El señor González Durieux reconoce que el régimen económico que originalmente intentó consagrar mediante las capitulaciones matrimoniales fue el de una absoluta separación de bienes presentes y futuros, pero sostiene que mediante la inclusión de la cláusula final cedió en parte su reclamo y accedió a reconocerle a la señora Guadalupe Solís participación en los bienes que en el futuro adquirieran. De esta forma, arguye que nunca consintió a la entrega de los frutos procedentes de sus bienes privativos.

Por su parte, la señora Guadalupe Solís aduce que el régimen que gobierna el matrimonio entre ambos es el de

la sociedad legal de bienes gananciales para todos los efectos legales. Ello en vista de que, a su entender, en el contrato de capitulaciones matrimoniales no se estableció ninguna condición o limitación de los efectos del régimen de gananciales sobre los bienes adquiridos por las partes antes de contraer matrimonio.

Los foros inferiores determinaron que las estipulaciones incluidas en las capitulaciones matrimoniales en controversia eran contradictorias y que la última cláusula añadida reflejaba que los otorgantes finalmente acordaron que el régimen de la sociedad legal de bienes gananciales regiría el matrimonio. Por su parte, el señor González Durieux plantea que dichos foros erraron al hacer prevalecer una sola cláusula frente a las demás, en lugar de armonizarlas para hacer valer la verdadera intención de los contratantes que pretendían establecer un régimen económico combinado. Tras examinar la escritura de capitulaciones matrimoniales, así como la transcripción de los testimonios vertidos por las partes ante el foro de instancia, entendemos que al señor González Durieux le asiste la razón.

En el caso de autos no está en controversia que el régimen de la sociedad legal de bienes gananciales rige los bienes que las partes adquirieron durante la vigencia del matrimonio. La cuestión ante nuestra consideración es si se debe considerar que la cláusula de la escritura que adopta un régimen ganancial abarca también el producto proveniente de los bienes adquiridos por cada

una de las partes antes de casarse, es decir, los frutos de los bienes privativos.

Antes de interpretar la escritura en cuestión, debemos aclarar el efecto práctico que tendría una u otra solución. Sabido es que los bienes que una persona aporte al matrimonio como de su pertenencia serán "bienes propios de cada uno de los cónyuges" o, lo que es igual, bienes privativos. 31 L.P.R.A. sec. 3631. Sin embargo, una vez se celebra el matrimonio, como regla general, **"[l]os frutos, rentas o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges" serán bienes gananciales**. (*Énfasis nuestro*). Artículo 1301 del Código Civil, 31 L.P.R.A. sec. 3641. Es decir, para que el producto procedente de los bienes que cada cónyuge adquirió antes de contraer matrimonio no sea ganancial, habrá que pactar la separación de dichos bienes mediante un contrato de capitulaciones matrimoniales. De lo contrario, y como consecuencia del régimen de la sociedad legal de gananciales, dicho producto será ganancial por mandato de ley.[3]

En el presente caso, la cláusula segunda de la parte expositiva del contrato de capitulaciones matrimoniales

---

[3] Conviene añadir también que si el aumento en valor de un inmueble o de unas acciones es sólo el resultado del transcurso del tiempo, hemos establecido que tal aumento beneficiará únicamente al propietario del bien y, en consecuencia, tal ganancia se considerará de carácter privativo. Alvarado Colón v. Alemany Planell, 157 D.P.R. 672 (2002); Sucn. Santaella v. Srio. de Hacienda, 96 D.P.R. 442 (1968).

ante nuestra consideración dispone que los otorgantes desean **"mantener separadamente** la propiedad y administración de todos **sus respectivos bienes presentes y futuros"**. (*Énfasis nuestro*). Enfatizaron esta separación de bienes mediante la siguiente cláusula, en la que expresamente rechazaron que el matrimonio estuviese sujeto al régimen de la sociedad legal de gananciales provista en nuestro Código Civil, aclarando además que tampoco lo estarían sus bienes **"presentes o futuros"**. (*Énfasis nuestro*). De estas disposiciones se desprende que, en un principio, los otorgantes estipularon una total separación de la propiedad y administración tanto de los bienes que habían adquirido antes de contraer nupcias, como de los que fueran a adquirir durante la vigencia del matrimonio.

Sin embargo, del expediente surge que tras una negociación en privado entre los futuros cónyuges, éstos decidieron incluir al final de la escritura una cláusula que establecía que **"en lo sucesivo, cualesquiera bienes** muebles o inmuebles **que puedan adquirir** las partes, **luego de celebrado el matrimonio, se regirá por el régimen de la sociedad legal de gananciales"**. (*Énfasis nuestro*). Al examinar dicha cláusula a la luz de la normativa que nos requiere analizar las disposiciones contractuales de forma integrada, concluimos que la inclusión de esta última disposición no tuvo el efecto de anular el resto de las capitulaciones matrimoniales. Por el contrario, entendemos que mediante su inclusión los otorgantes

<u>modificaron</u> las cláusulas contenidas en la parte expositiva de las capitulaciones matrimoniales a los fines de conferirle carácter ganancial únicamente a los bienes adquiridos con posterioridad a la celebración del matrimonio. Veamos.

Si analizamos la escritura en controversia, podemos notar que, **al incluir la última cláusula, los otorgantes se aseguraron de sujetar exclusivamente los bienes futuros, o los que adquiriesen luego de que se casaran, al régimen ganancial.** Ello es así en vista de que, contrario a las referencias que habían incluido a lo largo de las capitulaciones matrimoniales en cuanto a "sus respectivos bienes propios" o, incluso, a los "bienes presentes", la referida cláusula final mencionó únicamente los bienes que se pudieran adquirir "luego de celebrado el matrimonio". Asimismo, al añadirla para disponer el régimen que iba a regir los bienes "en lo sucesivo", los otorgantes desvincularon de ese régimen aquellos bienes que se hubiesen adquirido hasta ese momento, previo al suceso del matrimonio.

El contraste en el lenguaje que los otorgantes utilizaron en las cláusulas contractuales en controversia referente al momento en que se hubieran adquirido los bienes, pone de manifiesto que la última estipulación no contravino en modo alguno el régimen de separación de propiedad y administración que éstos previamente habían dispuesto para regir los "bienes presentes" al momento de otorgar la escritura y previo a contraer nupcias.

Contrario a lo resuelto por el foro recurrido, entendemos que no era necesario excluir de forma expresa el incremento o aumento de valor de los bienes privativos del régimen económico seleccionado para que no se considerasen de naturaleza ganancial, toda vez que los derechos sobre los bienes privativos ya se habían regulado -y desvinculado de los intereses de la sociedad conyugal- mediante las otras disposiciones de la escritura. De lo contrario, no hubiera tenido sentido incluir -y mantener inalteradas- las cláusulas sobre separación de "bienes presentes", cláusulas que no podemos ignorar por el mero hecho de que se redactaran en la primera parte de las capitulaciones matrimoniales, antes de la inclusión de la cláusula añadida posteriormente.

En efecto, si las capitulaciones matrimoniales no hubieran dispuesto la separación de los bienes que cada cónyuge tenía antes de casarse junto con sus frutos o incrementos en valor, no hubiera habido ninguna necesidad de otorgarlas. Ello en vista de que, en nuestro ordenamiento jurídico, la separación de los bienes adquiridos por las partes antes de contraer matrimonio está dada, aún en ausencia de capitulaciones matrimoniales. Esto demuestra que el señor González Durieux y la señora Guadalupe Solís, al firmar sus capitulaciones, querían separar algo más que los bienes que ya habían adquirido antes de casarse, y ese algo más

son los frutos o incrementos en valor procedentes de los bienes privativos de cada cónyuge.

De otra parte, si consideramos los testimonios de las partes ante el Tribunal de Primera Instancia debemos concluir, de igual forma, que los otorgantes consagraron en la escritura de capitulaciones matrimoniales un régimen económico mixto que combinaba elementos de la sociedad legal de bienes gananciales con el régimen de la separación de bienes.

Por un lado, el señor González Durieux testificó que cuando se firmó el documento "la cuestión era mantener lo que eran bienes privativos mantenerlos fuera de todo" [sic], aun cuando entendía que, después de contraer matrimonio, la sociedad de gananciales regiría en caso de que compraran una casa o un apartamento. A tono con ello, sostuvo que entendía que si "eran bienes privativos, siguen siendo bienes privativos".

Por otro lado, la señora Guadalupe Solís sostuvo que su intención fue que todos lo "bienes futuros" se rigieran por el régimen legal de la sociedad de gananciales. Al no controvertir lo expresado por el señor González Durieux en cuanto a mantener separado todo lo relativo a los bienes privativos, entendemos que su testimonio no es incompatible con lo que plantea el señor González Durieux. De hecho, la señora Guadalupe Solís declaró que, tras la inclusión de la cláusula final, firmó las capitulaciones porque la escritura le pareció aceptable en su totalidad. A la luz de lo anterior,

tampoco podemos endosar el dictamen recurrido, que por razón de que no se incluyó ninguna condición o limitación expresa al régimen ganancial pactado, ni siquiera consideró la posibilidad de que se hubiera estipulado un régimen económico combinado.

En fin, una interpretación integrada de las cláusulas contractuales en controversia, así como un análisis de lo declarado por las partes, nos convence de que la escritura de capitulaciones matrimoniales estableció -tal y como sostiene el señor González Durieux- un "régimen cuasi ganancial" para todos los bienes que las partes adquirieran luego de que se celebrara el matrimonio, pero manteniendo la separación de los "bienes presentes" al momento de otorgar la escritura pública, es decir, de los bienes que cada uno tuviera antes de contraer matrimonio.

Al resolver de esta manera, tenemos presente que las parejas que deseen contraer nupcias en nuestra jurisdicción pueden optar por diversos regímenes económicos, que incluyen desde el régimen clásico de la sociedad legal de bienes gananciales o la total separación de bienes, hasta un régimen económico que combine estas posibilidades. En este caso, precisamente, los otorgantes pactaron un régimen combinado que separaba el producto de los bienes privativos del régimen ganancial seleccionado para los bienes adquiridos con posterioridad a la celebración del matrimonio. Este pacto, sin lugar a dudas, no infringe la ley, la moral,

el orden público, ni los fines del matrimonio; únicos límites que nuestro ordenamiento jurídico le impone a la libertad de contratación.

Aunque hemos establecido que, como regla general, este Tribunal no intervendrá con las determinaciones de hechos que realice el Tribunal de Primera Instancia salvo que se demuestre parcialidad, pasión o prejuicio de parte de ese foro, Trinidad García v. Chade, *supra*, concluimos que en el caso de autos los foros inferiores erraron, como cuestión de derecho, al no reconocer la naturaleza combinada del régimen económico seleccionado por las partes en las capitulaciones matrimoniales ante nuestra consideración. En su lugar, resolvemos que ambos cónyuges tienen derecho a participar en todos los bienes adquiridos durante el matrimonio, con exclusión de los que provengan de los bienes privativos de cada uno de ellos.

IV.

Por los fundamentos que preceden, revocamos el dictamen emitido por el Tribunal de Apelaciones y, en consecuencia, el del Tribunal de Primera Instancia. Se devuelve el caso al foro de instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.

Se dictará Sentencia de conformidad.

FEDERICO HERNÁNDEZ DENTON
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Blanca I. Guadalupe Solís

   Demandante-Recurrida

         v.                         CC-2007-213     Certiorari

Osvaldo González Durieux

   Demandado-Peticionario

SENTENCIA

San Juan, Puerto Rico, a 10 de diciembre de 2007.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca el dictamen emitido por el Tribunal de Apelaciones y, en consecuencia, el del Tribunal de Primera Instancia. Se devuelve el caso al foro de instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.

Así lo pronuncia y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre sin opinión escrita. La Juez Asociada señora Fiol Matta disiente con opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Blanca I. Guadalupe Solís
    Demandante-recurrida

v.

*Certiorari*

CC-2007-213

Osvaldo González Durieux
    Demandado-peticionario

Opinión disidente emitida por la Jueza Asociada SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 10 de diciembre de 2007.

Disiento de la decisión mayoritaria, pues a mi juicio, el Tribunal se equivoca al no aplicar la doctrina de interpretación restrictiva que impera en materia de capitulaciones matrimoniales. Al hacerlo, la mayoría rechaza la letra clara de un contrato para sustituirla por la "intención" de una de las partes, intención, que de acuerdo al Tribunal de Primera Instancia tras una vista evidenciaria, y según confirma el Tribunal de Apelaciones, no probó ser **la intención común** requerida para resolver un conflicto contractual. Más aún, pienso que la letra del contrato era clara, por lo que no era necesario

recurrir a la intención de las partes.[4]  En cualquier caso, puesto que nuestra función no es revisar los fundamentos del dictamen del foro inferior, sino la disposición del caso, hago constar que a mi parecer los foros inferiores no resolvieron movidos por error, pasión, prejuicio ni parcialidad y dispusieron correctamente del caso, por lo que no debemos revocar sus sentencias.

Mediante las capitulaciones que son objeto de análisis, los cónyuges Blanca Guadalupe Solís y Osvaldo González Durieux rechazaron la sociedad legal de bienes gananciales que suple Código Civil a falta de capitulaciones; pactaron una estricta separación de bienes privativos y acordaron que regiría la sociedad legal de bienes gananciales en cuanto a los bienes adquiridos durante el matrimonio.  La controversia que nos presentan las partes surge de la aparente contradicción entre dos cláusulas del contrato de capitulaciones matrimoniales, una que establece la estricta separación de bienes privativos y otra que establece el régimen de gananciialidad sobre los bienes adquiridos durante el matrimonio. Debido a esto, nos toca resolver las consecuencias de la relación de estas dos cláusulas sobre los frutos, rentas e intereses de los bienes privativos.

Para abordar la cuestión planteada es necesario precisar nuevamente las normas sobre interpretación de las capitulaciones matrimoniales en nuestro ordenamiento.  Luego debemos abundar sobre la razón de ser de la gananciialidad de

---

[4]Véase Maldonado v. Cruz Dávila, 161 D.P.R. 1, 27 (2004).

los frutos rentas e intereses de los bienes privativos dentro del régimen de la sociedad de gananciales para la mejor comprensión de su pertenencia al grupo de "bienes adquiridos durante el matrimonio".

El lazo conyugal y la consecuente vida matrimonial, aparte de su dimensión sentimental y afectiva, implican una realidad material que incide indefectiblemente en el orden económico, por eso algunos le llaman "entidad económica dotada de medios pecuniarios"[5]. Por esta razón, es de esperarse que el derecho haya previsto la necesidad de una estructura unitaria, organizada para gobernar los diversos escenarios que presenta este aspecto patrimonial de la vida conyugal. La sociedad legal de bienes gananciales conforma esa regulación uniforme que provee nuestro sistema de derecho civil a quienes contraen matrimonio. [6]

---

[5] Puig Brutau, <u>Fundamentos de Derecho Civil</u>, Bosch, Barcelona, Tomo IV, Vol. I, 1967, pág. 368, citando a Kahn Freund.

[6] Son varias las razones que tuvo el legislador para seleccionar un régimen de la naturaleza del de gananciales por lo que no serán objeto de discusión, pero una breve referencia a su origen nos brinda la idea general que conforma la esencia de dicho sistema económico matrimonial:

> Se dice que era costumbre en las tierras septentrionales de Europa que las mujeres acompañaran a sus maridos en la paz y en la guerra y que, por ello, era justo que compartieran, al lado de los peligros, las utilidades del botín. Tacito, al relatar las costumbres de los germanos, cuenta que, llegado el momento de tomar estado se advertía a las mujeres que se convertían en socias de los trabajos y peligros (*laborum pericolorum socias*). Diez Picazo y Gullón, <u>Sistema de derecho civil</u>, Tecnos, Madrid, 1997, vol. IV, pág. 175.

Los civilistas resumen la característica principal de la sociedad de gananciales en un proverbio atribuido en la doctrina a Palacios Rubios: "quien está en las ganancias, está

A pesar de que el sistema de gananciales es el establecido legalmente para las parejas que contraen matrimonio, mediante lo que Santos Briz califica de "sistema de libertad de pacto"[7], nuestro ordenamiento permite que los futuros cónyuges establezcan y confeccionen el régimen patrimonial que ha de regir su matrimonio, mediante el otorgamiento del llamado contrato de capitulaciones matrimoniales.

Dentro del régimen de libertad que impera en nuestro sistema de contratación, las capitulaciones matrimoniales admiten toda clase de condiciones que no sean contrarias a la ley, la moral y el orden público. Artículo 1267 del Código Civil, 31 L.P.R.A. sec. 3551. En el pasado hemos resuelto que los novios pueden:

> …mantener el régimen legal regulando las aportaciones de bienes y estableciendo aquellos pactos autorizados y compatibles con dicho sistema; eliminar totalmente el régimen legal, ya sea simplemente pactando que no regirá la sociedad legal de gananciales o estableciendo un nuevo sistema… y combinar diferentes regímenes siempre que no se violen los preceptos prohibitivos generales o las prohibiciones especiales impuestas por ley para el régimen que como fundamental se haya pactado. Umpierre del Valle v. Torres Díaz, 114 D.P.R. 449, 461 (1983).

Ya hemos dicho que "la existencia de capitulaciones matrimoniales no impide ni excluye la existencia de un régimen legal de gananciales", inclusive se ha resuelto que no hay

---

en las pérdidas". Véase Scævola, Código Civil comentado y concordado extensamente. 2da ed., Reus, Madrid, 1967, tomo XXII, pág. 508.

[7] Santos Briz, Derecho Civil: Teoría y Práctica, Tomo V, Ed. Rev. Der. Priv. Madris, 1982, pág. 113.

disposición legal alguna que prohíba que en las capitulaciones pueda estipularse el régimen de gananciales <u>Umpierre del Valle v. Torres Díaz</u>, supra. Los futuros cónyuges gozan de una amplísima libertad para pactar el sistema económico que crean conveniente; por ello, **las cláusulas que contengan las capitulaciones deberán expresar claramente las condiciones especiales a las que estarán sujetas los bienes que se adquieran durante el matrimonio**. A falta de pacto, e incluso, a falta de expresión sobre las reglas que regirán la economía matrimonial, se entenderá que el sistema económico del matrimonio lo es la sociedad legal de gananciales. <u>Umpierre v. Torres Díaz</u>, 114 D.P.R. 449 (1983). Por tal razón este Tribunal ha expresado que las disposiciones del contrato de capitulaciones "deben ser claras y precisas y a esos efectos **deben interpretarse restrictivamente en todo lo que afecten el régimen de la referida sociedad**." <u>Vilariño v. Registrador</u>, 88 D.P.R. 288, 293 (1963).

En nuestro ordenamiento rige aún el principio de inalterabilidad de las capitulaciones matrimoniales luego de celebrado el matrimonio. Artículos 1271 y 1272 del Código Civil, 31 L.P.R.A. secs. 3555 y 3556. Sin embargo, sobre el alcance de este principio acogimos la postura de Manresa en cuanto a que "[n]o existe alteración… en la **simple interpretación racional** de cláusulas legalmente estipuladas", facultad que se ha delegado exclusivamente a la función judicial. <u>Vilariño v. Registrador</u>, supra, pág. 294.

En el caso ante nuestra consideración, los cónyuges pactaron que **"cualesquiera bienes muebles o inmuebles que puedan adquirir las partes**, luego de celebrado el matrimonio, **se regirá por el régimen de sociedad legal de gananciales."** En su artículo 1295, nuestro Código Civil brinda una definición general de lo que implica la sociedad de gananciales y dispone que al disolverse el matrimonio, los cónyuges harán suyos por mitad **"las ganancias o beneficios obtenidos indistintamente** por cualquiera de los cónyuges **durante** el mismo matrimonio". 31 L.P.R.A. sec. 3621.[8] De acuerdo a Puig Brutau, en esta comunidad de ganancias o de adquisiciones a título oneroso:

> … se hacen comunes **todos los bienes adquiridos durante el matrimonio** a costa del trabajo de cualquiera de los cónyuges o de los frutos de su respectivo caudal privativo. **Comprende, pues, las rentas de los esposos, los productos de su trabajo, las economías hechas con estas rentas o productos y las adquisiciones a titulo oneroso realizadas durante el matrimonio.**[9]

Partiendo del sentido de la sociedad de gananciales y del significado que el citado precepto legal le da, Vázquez Bote señaló que **"no se puede hablar de gananciales cuando no hay frutos o ganancias propiamente dichos."** <u>Derecho privado puertorriqueño</u>, Butterworth Legal Publishers, New Hampshire, 1993, nota al calce núm. 25, pág. 199. A estos efectos, el

---

[8] El Fuero Juzgo, de donde proviene este artículo en su Titulo II, núm. XVII, hablaba de "lo que ganaren o acrecieren" los cónyuges, mientras que el Fuero Real indicaba que "lo ganado y comprado durante el matrimonio" pertenecería a ambos cónyuges. Véase Scævola, *op.cit*, pág, 230.

[9] Puig Brutau, *op.cit.*, pág. 371.

artículo 1301 enumera aquello que será considerado bienes o ganancias adquiridas durante el matrimonio, y reconoce entre ellos en su inciso tercero, "los frutos, rentas, o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o peculiares de cada uno de los cónyuges". 31 L.P.R.A. sec. 3641.[10]

Cabe señalar que la doctrina ha estado dividida en cuanto a la capacidad en que dichos frutos, rentas e intereses forman parte del caudal ganancial.[11] Se ha dicho que existe un usufructo o "cuasiusufructo" de los bienes privativos de los cónyuges a favor de la sociedad conyugal.[12] Otro sector de la doctrina es de la opinión que el haber de la sociedad conyugal adquiere dichos frutos rentas e intereses, cuyo rendimiento se repartirá al disolverse el matrimonio, configurándose en ese

---

[10] J.J. Rams Albesa resalta la importancia del análisis de éste grupo de bienes e indica que:

>…en la medida en que el comportamiento económico del matrimonio genera una reacción de ahorro inversión en el que tiene su origen la masa ganancial, la problemática de los rendimientos adquiere, por modesta que sea, el primer plano en el interés del complejo entramado de relaciones que configuran la sociedad de gananciales, pues en esta fuente, económicamente secundaria, se encuentran en embrión, pero perfectamente caracterizados, todos los elementos que deben ser estudiados con mayor atención en los epígrafes destinados a la administración y gestión de la sociedad." La sociedad de gananciales, Tecnos, Madrid, 1992, pág. 122.

[11] Véase Rams Albesa, op.cit. pág. 122-124.

[12] Entre los exponentes de esta explicación se encuentran García Goyena, Puig Brutau, Manresa y Cossío. Véase Manresa, op. cit. págs. 681-686 y 735-737.

momento el derecho dominical de los cónyuges sobre los mismos.[13]

De acuerdo a Scævola, la frase "bienes adquiridos durante el matrimonio" que contiene el artículo 1295 significa "bienes que se reciben en dominio", pues las formas de adquisición han de ser "aquellas mediante las cuales se obtiene la propiedad de las cosas", a fin de cuentas, adquisición es sinónimo de "entrada en el dominio". Scævola *op. cit.* págs. 354-353. En este sentido, ninguna duda debe ofrecer el fundamento de la regla de que **pertenecen** al haber de la sociedad de gananciales los frutos, rentas e intereses, pues "todo lo que sea rendimiento normal o que no deje mermado el bien o derecho que lo produzca, entra en el concepto amplio de ganancia o beneficio"[14], al que se refiere el artículo 1295.

El trato que nuestro Código Civil le da a los frutos, rentas e intereses de los bienes privativos y comunes ha sido objeto de escaso estudio en nuestra jurisprudencia. En cuanto a los frutos, rentas e intereses de los bienes comunes, es más fácil comprender que éstos pertenezcan a la sociedad legal de gananciales. Es el destino de los frutos, rentas e intereses

---

[13] Entre éstos Rams Albesa, Roca Sastre y Lacruz. Veánse Puig Brutau, *op. cit.* pág. 589 y Rams Albesa, *op.cit*, págs. 122-124, quien acoge la explicación de Lacruz y rechaza la equiparación al usufructo:

> …la ganancialidad de los rendimientos generados por los privativos no proceden de una verdadera titularidad del consorcio que es imposible técnicamente, sino de la estructura misma de la sociedad de gananciales y de su sentido íntimamente comunitario. Rams Albesa, *op. cit.*, pág. 124

[14] Puig Brutau, *op. cit.*, pág. 640.

de los bienes privativos que representan "una fuente de ingreso, beneficio o ganancia para el fondo común"[15] lo que ha provocado algunos pronunciamientos por parte de los tratadistas españoles.

Para J.M. Reyes Monterreal:

> …el pasivo ganancial, esto es, el conjunto de responsabilidades a que está afecto este patrimonio, ha de responder a la misma idea que preside la formación del mismo: su primordial adscripción al cumplimiento de los fines del matrimonio. Por ello… cabe una perfecta correlación entre los bienes que forman parte del patrimonio ganancial y las cargas que lo gravan. El régimen legal de gananciales, Gráficas Menor, Madrid, 1962, pág. 24.

Cónsono con esta idea es el pensamiento de Scævola, quien al tratar el tema del patrimonio ganancial expresó que su fin "consiste en que las cargas comunes han de ser sostenidas en común por los cónyuges, a cuyo efecto se someten los frutos recogidos durante el matrimonio".[16] Pues, según este autor, "si se constituye un fondo común de bienes, es, precisamente, por la imperiosa necesidad de satisfacer obligaciones idénticamente comunes." Scævola, *op. cit.* pág. 474. En igual sentido se ha pronunciado Manresa:

> Nada más natural que los productos todos del trabajo y de los bienes de cada uno de los cónyuges o de ambos se destinen desde luego a cubrir las necesidades de los mismos, con completa igualdad… Lo mismo cabe decir respecto a las demás cargas u obligaciones de la sociedad. Se trata de necesidades o cargas comunes que han de ser totalmente satisfechas o cumplidas. El cumplimiento exige

---

[15] M. Fraticelli, Un nuevo acercamiento a los regímenes económicos en el matrimonio, 39 Rev. Jur. U.I.P.R. 113, 131-132 (2005).

[16] Scævola, *op. cit.* pág. 266.

medios, y sin tocar el capital de cada cónyuge, esos medios los proporcionan en primer término los frutos o productos del capital o del trabajo. Manresa, *op.cit.* pág. 679.

En el artículo 1362 del Código Civil español se establecen las cargas a las que estará afecto el patrimonio ganancial. En nuestro ordenamiento, el homólogo es el articulo 1308, 31 L.P.R.A. sec. 3661.[17] Scævola explica que se impone la atribución de los frutos y rentas a la sociedad de gananciales porque "la aportación de los bienes por el marido y la mujer no tiene ni puede tener, otro fin, ni a nadie se le ocurrió atribuírselo, que el de atender con ellos, aunque sin detrimento de los mismos, y, por consecuencia, sólo con sus frutos, al sostenimiento de las cargas del matrimonio." Scævola *op. cit.*, pág. 387.[18] Así también lo ha expresado J. Santos Briz:

---

[17] Serán de cargo de la sociedad de gananciales:

(1) Todas las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges.
(2) Los atrasos o créditos devengados durante el matrimonio, de las obligaciones a que estuviesen afectos así los bienes propios de los cónyuges como los gananciales.
(3) Las reparaciones menores o de mera conservación hechas durante el matrimonio en los bienes peculiares de cualquiera de los cónyuges. Las reparaciones mayores no serán de cargo de la sociedad.
(4) Las reparaciones mayores o menores de los bienes gananciales.
(5) El sostenimiento de la familia y la educación de los hijos comunes y de cualquiera de los cónyuges.
(6) Los préstamos personales en que incurra cualquiera de los cónyuges.

[18] Como dijera Scævola:
    …la sociedad conyugal que aprovecha los frutos de las fincas, es la obligada a costear sus reparaciones ordinarias, tanto más cuanto que la conservación de

Es lógico que si son gananciales los rendimientos de los bienes privativos y de los comunes, así como las ganancias de los negocios de cada uno, sea la sociedad la que soporte los gastos de administración y conservación de todo ello. Tratado de derecho civil, Bosch, Barcelona, vol. V, 2003, pág. 189.

En Puerto Rico, la doctrina ha reconocido la correlación entre las cargas del matrimonio y la adquisición de los frutos de los bienes privativos:

El principio de pertenencia de los frutos a la comunidad conyugal es absoluto, cualquiera que sea su origen, ya lo fueren naturales o civiles… siempre que se dediquen al levantamiento de las cargas matrimoniales. Vázquez Bote, op. cit. pág. 181

La correspondencia entre las cargas del matrimonio y la adquisición de los frutos, rentas e intereses del capital privativo de los cónyuges ha sido reiteradamente calificada en nuestra jurisdicción como una basada en postulados de justicia económica[19]. Así lo reconocimos expresamente en Robles Ostolaza v. U.P.R. 96 D.P.R. 583, 594-595 (1968). Allí postulamos que dicha correlación tiene como objeto "evitar

_____

aquellas contribuye directamente al sostenimiento de los frutos, y faltaría proporcionalidad en el hecho de que donde se aumenta por medio de ciertos gastos el haber conyugal, se hiciere cargo a uno sólo de los dos consortes del importe de la reparación. Scævola, op.cit. pág. 508.

[19] Al describir la sociedad legal de bienes gananciales, M. Fraticelli hace alusión a ésta justicia correlativa presente en la relación entre cargas del matrimonio y el régimen de los frutos y menciona una de las instancias reparadoras:
Algunos [bienes privativos] ingresan al fondo común porque constituyen elementos de una correlativa justicia económica dentro del matrimonio, al nivelar sus activos y cargas, como es el caso de los frutos de los bienes privativos mencionados en el párrafo anterior, que compensan las reparaciones menores, el pago de atrasos o réditos devengados durante el matrimonio y otros gastos que se imponen como carga de la sociedad. Ibid. pág. 132.

injusticias económicas en la operación de la sociedad"[20].   En

virtud   de   lo   anterior,   señalamos   como   ejemplo   dos

circunstancias que evidencian lo anterior:

> …el Art. 1308(2) establece que serán de cargo de
> la  sociedad  de  gananciales  los  atrasos  devengados
> durante  el  matrimonio  de  las  obligaciones  a  que
> estuviesen afectos los bienes propios de cada cónyuge
> y los gananciales.  Esta carga está compensada por el
> Art.  1301(3)  que  dispone  que  son  gananciales  los
> frutos,  rentas  o  intereses  devengados  durante  el
> matrimonio  procedentes  de  los  bienes  privativos  o
> gananciales.   Así  también  el  Art.  1308(5)  pone  a
> cargo  de  la  sociedad  de  gananciales  el  sostenimiento
> de  la  familia  y  la  educación  de  los  hijos.   Compensa
> este  cargo  la  disposición  del  Art.  1303  que  dispone
> que  pertenecen  a  la  sociedad  de  gananciales  los
> frutos  e  intereses  devengados  del  usufructo  que
> tienen los cónyuges en los bienes de sus hijos.

El artículo 1362 español establece que una de las cargas

de   la   sociedad   legal   de   bienes   gananciales   es   la

administración   ordinaria   de   los   bienes   privativos   de

cualquiera de los cónyuges.   Nuestro Código Civil acogió la

misma idea, pero precisó mejor el alcance del lenguaje del

precepto  español  al  establecer  en  el  inciso  tercero  del

artículo 1308 que "[l]as reparaciones menores o de mera

conservación   hechas   durante   el   matrimonio   en   los   bienes

---

[20] En esa opinión citamos el trabajo de E. Bernier Las acciones
de daños  y  perjuicios  extracontractuales  en  la  sociedad  de
gananciales,  20  Rev.  Jur.  U.P.R.  172,  214  (1950).    Es  de
particular importancia la siguiente cita:
> En  las  disposiciones  legislativas  que  regulan  la
> sociedad legal de gananciales se encuentran elementos
> de  activo  y  pasivo  dentro  de  ésta.   Entre  estos
> elementos  de  activo  y  pasivo  existe  una  correlación
> que  evita  toda  clase  de  injusticias…  faltaría
> proporcionalidad  en  el  hecho  de  que,  donde  se  aumenta
> por  medio  de  ciertos  gastos  el  haber  conyugal,  se
> hiciera  cargo  de  uno  solo  de  los  dos  consortes  del
> importe de las reparaciones.

peculiares de cualquiera de los cónyuges" serán a cargo de la sociedad de gananciales sin derecho a ser indemnizada. Esta carga, según argumentan Diez Picazo y Gullón, va en "justa correspondencia a que los frutos y rendimientos de esos bienes son comunes o gananciales"; para los tratadistas, la administración ordinaria debe comprender "los gastos de conservación y los ocasionados para que los bienes den sus frutos o rendimientos." Diez Picazo y Gullón, *op. cit.* pág. 188. [21] A fin de cuentas y como hemos expuesto, la lógica del código en cuanto a la ganancialidad de los frutos, rentas e intereses de los bienes privativos de cada cónyuge está cimentada sobre factores evidentes de equidad.

De acuerdo a la discusión que antecede, y a la interpretación restrictiva que debemos aplicar al contrato de capitulaciones matrimoniales, no puedo suscribir la opinión

---

[21] El Código Civil español, en su artículo 1381 establece que:

Los frutos y ganancias de los patrimonios privativos y las ganancias de cualquiera de los cónyuges forman parte del haber de la sociedad y están sujetos a las cargas y responsabilidades de la sociedad de gananciales. Sin embargo, cada cónyuge, como administrador de su patrimonio privativo, podrá a este solo efecto disponer de los frutos y productos de sus bienes.

Rams Albesa ata este artículo al artículo 1362 del Código español y comenta que:

…la reiteración en que incurre [este] articulo acerca de la ganancialidad de los frutos privativos sirve, en cierto modo, para subrayar tal vez mejor recordar, que la administración ordinaria de éstos, así como la explotación regular de los negocios o el desempeño de la profesión, generan correlativas cargas para la sociedad de gananciales, con la categorización de responsabilidad definitiva.... Rams Albesa, *op. cit.* pág. 244; Véase también Manresa, *op. cit.*, pág. 734.

mayoritaria. Si bien es cierto que en sus capitulaciones la pareja rechazó el régimen de sociedad legal de bienes gananciales y pactó la separación de bienes, también es cierto que instituyeron la sociedad legal de bienes gananciales como sistema económico con respecto a los bienes adquiridos durante el matrimonio. A pesar de que, en efecto, se pactó la estricta separación de bienes privativos, así como su administración y disposición, ya éstos son supuestos dentro del sistema de gananciabilidad. Así lo explica Diez Picazo:

> La existencia de la sociedad de gananciales no impone ninguna limitación a los cónyuges en relación con su patrimonio privativo. El Código Civil no lo dice de manera expresa, pero es una regla que se deduce de todo su articulado. Cada consorte administra, pues, sus bienes privativos. En cambio, los frutos y ganancias de los bienes privativos y cualesquiera otras ganancias de los cónyuges son bienes gananciales, y por consiguiente, forman parte de su haber. Diez Picazo, *op. cit.*, pág. 177.

Las capitulaciones que nos ocupan fueron claras al establecer el régimen de gananciabilidad sobre bienes muebles e inmuebles adquiridos durante el matrimonio. Antes de contraer matrimonio, la pareja gozaba de plena libertad para pactar cualquier otro régimen económico o para establecer un trato distinto a las cargas del matrimonio. No lo hicieron y por ende, operan en pleno efecto las disposiciones sobre la sociedad de gananciales sobre todos los bienes adquiridos durante el matrimonio y en cuanto a las cargas que conlleva dicho sistema. Como explica Scævola:

> …los esposos futuros pueden convenir el régimen por el que ha de gobernarse su sociedad conyugal, elegido uno en concreto- ahora el de gananciales- se ha de aceptar con todas sus consecuencias; con el

pleno acatamiento de la doctrina legal referente al mismo. Scævola, *op. cit.* pág 230.

A pesar de lo anterior, el Tribunal de Primera Instancia entendió necesario celebrar una vista evidenciaria para dilucidar la controversia sobre la intención de las partes. En ésta, el Sr. González Durieux, aceptó que todo lo que se acumulara durante el matrimonio sería de naturaleza ganancial. La notario que autorizó la escritura de capitulaciones manifestó haberle advertido a la pareja que si se incluía la cláusula que establecía el régimen ganancial para los bienes adquiridos durante el matrimonio, "daba lo mismo si la firmaban o no la firmaban, porque prácticamente quedaban en sociedad legal de gananciales" y que no necesitaban firmar la escritura para establecer el régimen económico que habían configurado. La notario explicó que el Sr. González Durieux hizo las capitulaciones para separar los bienes que ya tenía de los que se adquirieran durante el matrimonio. Al cabo de esta vista, el Tribunal de Primera Instancia entendió que el régimen económico del matrimonio González-Guadalupe era el ganancial o de adquisiciones a titulo oneroso, postura que avaló el Tribunal de Apelaciones. Aunque, según he expuesto, no coincido con sus fundamentos, confirmaría la sentencia que reconoció la existencia de la sociedad legal de bienes gananciales y por tanto, la naturaleza ganancial del producto de los bienes privativos de cada una de las partes que son incluidos expresamente por el Código Civil entre los bienes "percibidos o devengados durante el matrimonio" que están

sujetos al régimen ganancial. Artículo 1301 del Código Civil, *supra.*


                                        Liana Fiol Matta
                                        Jueza Asociada