*692 Opinión disidente emitida por la
Jueza Asociada Señora Fiol Matta.
Disiento de la decisión mayoritaria pues, a mi juicio, el tribunal se equivoca al no aplicar la doctrina de interpre-tación restrictiva que impera en materia de capitulaciones matrimoniales. Al hacerlo, la mayoría rechaza la letra clara de un contrato para sustituirla por la "intención” de una de las partes, intención que, de acuerdo con el Tribunal de Primera Instancia —tras una vista evidenciaría, y según confirma el Tribunal de Apelaciones— no probó ser la intención común requerida para resolver un conflicto contractual. Más aún, pienso que la letra del contrato era clara, por lo que no era necesario recurrir a la intención de las partes.(1) En cualquier caso, puesto que nuestra función no es revisar los fundamentos del dictamen del foro inferior, sino la disposición del caso, hago constar que a mi parecer los foros inferiores no resolvieron movidos por error, pasión, prejuicio ni parcialidad y dispusieron correc-tamente del caso, por lo que no debemos revocar sus sentencias.
Mediante las capitulaciones que son objeto de análisis, los cónyuges Blanca Guadalupe Solís y Osvaldo González Durieux rechazaron la Sociedad Legal de Bienes Ganan-ciales que suple el Código Civil a falta de capitulaciones; pactaron una estricta separación de bienes privativos y acordaron que regiría la Sociedad Legal de Bienes Ganan-ciales en cuanto a los bienes adquiridos durante el matrimonio. La controversia que nos presentan las partes surge de la aparente contradicción entre dos cláusulas del contrato de capitulaciones matrimoniales: una que esta-blece la estricta separación de bienes privativos y otra que establece el régimen ganancial sobre los bienes adquiridos durante *693 el matrimonio. Debido a esto, nos toca resolver las conse-cuencias de la relación de estas dos cláusulas sobre los fru-tos, rentas e intereses de los bienes privativos.
Para abordar la cuestión planteada es necesario preci-sar nuevamente las normas sobre interpretación de las ca-pitulaciones matrimoniales en nuestro ordenamiento. Luego debemos abundar sobre la razón de ser de la ganan-cia de los frutos rentas e intereses de los bienes privativos dentro del régimen de la sociedad de gananciales para la mejor comprensión de su pertenencia al grupo de “bienes adquiridos durante el matrimonio”.
El lazo conyugal y la consecuente vida matrimonial, aparte de su dimensión sentimental y afectiva, implican una realidad material que incide indefectiblemente en el orden económico, por eso algunos le llaman “ ‘entidad eco-nómica dotada de medios pecuniarios’ ”.(2) Por esta razón, es de esperarse que el derecho haya previsto la necesidad de una estructura unitaria, organizada para gobernar los diversos escenarios que presenta este aspecto patrimonial de la vida conyugal. La Sociedad Legal de Bienes Ganan-ciales conforma esa regulación uniforme que provee nues-tro sistema de derecho civil a quienes contraen matrimonio. (3)
A pesar de que el sistema de gananciales es el estable-cido legalmente para las parejas que contraen matrimonio, *694 mediante lo que Santos Briz califica de “sistema de liber-tad de pacto”,(4) nuestro ordenamiento permite que los fu-turos cónyuges establezcan y confeccionen el régimen patrimonial que ha de regir su matrimonio mediante el otorgamiento del llamado contrato de capitulaciones matrimoniales.
Dentro del régimen de libertad que impera en nuestro sistema de contratación, las capitulaciones matrimoniales admiten toda clase de condiciones que no sean contrarias a la ley, la moral y el orden público. Art. 1267 del Código Civil, 31 L.P.R.A. see. 3551. En el pasado hemos resuelto que los novios pueden
... mantener el régimen legal regulando las aportaciones de bienes y estableciendo aquellos pactos autorizados y compatibles con dicho sistema; ... eliminar totalmente el régimen legal, ya simplemente pactando que no regirá la sociedad legal de gananciales o estableciendo “un nuevo sistema ...y ... com-binar diferentes regímenes, siempre que no se violen los pre-ceptos prohibitivos generales o las prohibiciones especiales impuestas por ley para el régimen que como fundamental se haya pactado. Umpierre v. Torres Díaz, 114 D.P.R. 449, 461 (1983).
Ya hemos dicho que “la existencia de capitulaciones ma-trimoniales no impide ni excluye la existencia de un régi-men legal de gananciales”; incluso se ha resuelto que no hay disposición legal alguna que prohíba que en las capi-tulaciones pueda estipularse el régimen de gananciales. Umpierre v. Torres Díaz, supra, pág. 461. Los futuros cón-yuges gozan de una amplísima libertad para pactar el sis-tema económico que crean conveniente; por ello, las cláu-sulas que contengan las capitulaciones deberán expresar claramente las condiciones especiales a las que estarán su-jetos los bienes que se adquieran durante el matrimonio. A falta de pacto, e incluso a falta de expresión sobre las re-glas que regirán la economía matrimonial, se entenderá *695 que el sistema económico del matrimonio es la Sociedad Legal de Gananciales. Id. Por tal razón, este Tribunal ha expresado que las disposiciones del contrato de capitulacio-nes “deben ser claras y precisas y a esos efectos deben in-terpretarse estrictamente en todo lo que afecten el régimen de la referida sociedad”. Vilariño Martínez v. Registrador, 88 D.P.R. 288, 293 (1963).
En nuestro ordenamiento rige aún el principio de inal-terabilidad de las capitulaciones matrimoniales luego de celebrado el matrimonio. Arts. 1271 y 1272 del Código Civil, 31 L.P.R.A. secs. 3555 y 3556. Sin embargo, sobre el alcance de este principio acogimos la postura de Manresa en cuanto a que “[n]o existe alteración ... en la simple in-terpretación racional de cláusulas legalmente estipuladas”, facultad que se ha delegado exclusivamente a la función judicial. (Énfasis en el original suprimido y énfasis suplido.) Vilariño Martínez v. Registrador, supra, pág. 294.
En el caso ante nuestra consideración, los cónyuges pac-taron que “cualesquiera bienes muebles o inmuebles que puedan adquirir las partes, luego de celebrado el matrimo-nio, se regirá por el régimen de sociedad legal de ganan-ciales”. En su Artículo 1295, nuestro Código Civil brinda una definición general de lo que implica la sociedad ganan-cial y dispone que, al disolverse el matrimonio, los cónyu-ges harán suyos por mitad “las ganancias o beneficios ob-tenidos indistintamente por cualquiera de los cónyuges durante el mismo matrimonio”. (Énfasis suplido.) 31 L.P.R.A. see. 3621.(5) De acuerdo con Puig Brutau, en esta comunidad de ganancias o de adquisiciones a título one-roso
.. .se hacen comunes todos los bienes adquiridos durante el ma-trimonio a costa del trabajo de cualquiera de los cónyuges o de los frutos de su respectivo caudal privativo.
*696 Comprende, pues, las rentas de los esposos, los productos de su trabajo, las economías hechas con estas rentas o productos y las adquisiciones a tí tulo oneroso realizadas durante el matrimonio. (Enfasis suplido.)(6)
Partiendo del sentido de la sociedad de gananciales y del significado que el citado precepto legal le da, Vázquez Bote señaló que “no se puede hablar de gananciales cuando no hay frutos o ganancias propiamente dichos ...”. (Enfasis suplido.) E. Vázquez Bote, Tratado teórico, práctico y crí-tico de derecho privado puertorriqueño, New Hampshire, Butterworth Legal Publishers, 1993, pág. 199 esc. 25. A estos efectos, el Artículo 1301 de nuestro Código Civil enu-mera aquello que será considerado bienes o ganancias ad-quiridas durante el matrimonio, y reconoce entre ellos, en su inciso tercero, “[l]os frutos, rentas, o intereses percibi-dos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges”. 31 L.P.R.A. sec. 3641.(7)
La doctrina ha estado dividida en cuanto a la capacidad en que dichos frutos, rentas e intereses forman parte del caudal ganancial.(8) Se ha dicho que existe un usufructo o “cuasiusufructo” de los bienes privativos de los cónyuges a favor de la sociedad conyugal.(9) Otro sector de la doctrina opina que el haber de la sociedad conyugal adquiere dichos *697 frutos, rentas e intereses, cuyo rendimiento se repartirá al disolverse el matrimonio, configurándose en ese momento el derecho dominical de los cónyuges sobre éstos.(10)
De acuerdo con Scaevola, la frase “bienes adquiridos du-rante el matrimonio” que contiene el Artículo 1295 signi-fica “bienes que se reciben en dominio”, pues las formas de adquisición han de ser “aquellas mediante las cuales se obtiene la propiedad de las cosas”, a fin de cuentas, adqui-sición es sinónimo de “entrada en el dominio”. Scaevola, op. cit., págs. 353-354. En este sentido, ninguna duda debe ofrecer el fundamento de la regla de que pertenecen al ha-ber de la sociedad de gananciales los frutos, rentas e inte-reses, pues “todo lo que sea rendimiento normal o que no deje mermado el bien o derecho que lo produzca, entra en el concepto amplio de ganancia o beneficio”,(11) al que se refiere el Artículo 1295.
El trato que nuestro Código Civil le da a los frutos, ren-tas e intereses de los bienes privativos y comunes ha sido objeto de escaso estudio en nuestra jurisprudencia. En cuanto a los frutos, rentas e intereses de los bienes comu-nes, es más fácil comprender que éstos pertenezcan a la Sociedad Legal de Gananciales. Es el destino de los frutos, rentas e intereses de los bienes privativos que representan “una fuente de ingreso, beneficio o ganancia para el fondo común”,(12) lo que ha provocado algunos pronunciamientos por parte de los tratadistas españoles.
Para Reyes Monterreal,
*698 ... el pasivo ganancial, esto es, el conjunto de responsabili-dades a que está afecto este patrimonio, ha de responder a la misma idea que preside la formación del mismo: su primordial adscripción al cumplimiento de los fines del matrimonio. Por ello ... cabe una perfecta correlación entre los bienes que for-man parte del patrimonio ganancial y las cargas que lo gravan. J.M. Reyes Monterreal, El régimen legal de ganancia-les, Madrid, Gráficas Menor, 1962, pág. 24.
Cónsono con esta idea es el pensamiento de Scaevola, quien al tratar el tema del patrimonio ganancial expresó que su fin “consiste en que las cargas comunes han de ser sostenidas en común por los cónyuges, a cuyo efecto se so-meten los frutos recogidos durante el matrimonio ...”.(13) Pues, según este autor, “si se constituye un fondo común de bienes es, precisamente, por la imperiosa necesidad de sa-tisfacer obligaciones idénticamente comunes”. Scaevola, op. cit., pág. 474. En igual sentido se ha pronunciado Man-resa:
Nada más natural que los productos todos del trabajo y de los bienes de cada uno de los cónyuges o de ambos se destinen desde luego a cubrir las necesidades de los mismos, con com-pleta igualdad .... Lo mismo cabe decir respecto a las demás cargas u obligaciones de la sociedad. Se trata de necesidades o cargas comunes que han de ser totalmente satisfechas o cumplidas. El cumplimiento exige medios, y sin tocar el capital de cada cónyuge, esos medios los proporcionan en primer término los frutos o productos del capital o del trabajo. J.M. Manresa, Comentarios al Código Civil español, 6ta ed. rev. Madrid, Ed. Reus, 1969, T. IX, pág. 679.
En el Artículo 1362 del Código Civil español se estable-cen las cargas a las que estará afecto el patrimonio ganancial. En nuestro ordenamiento, el homólogo es el Ar-tículo 1308 (31 L.P.R.A. sec. 3661).(14) Scaevola explica que se impone la atribución de los frutos y las rentas a la so- *699 ciedad de gananciales porque “la aportación de bienes por el marido y la mujer no tiene, ni puede tener, otro fin, ni a nadie se le ocurrió atribuírselo, que el de atender con ellos, aunque sin detrimento de los mismos, y, por consecuencia, sólo con sus frutos, al sostenimiento de las cargas del matrimonio”. Scaevola, op. cit, pág. 387.(15) Así también lo ha expresado Santos Briz:
[E]s lógico que si son gananciales los rendimientos de los bie-nes privativos y de los comunes, así como las ganancias de los negocios de cada uno, sea la sociedad la que soporte los gastos de administración y conservación de todo ello. J. Santos Briz, Tratado de derecho civil: teoría y práctica, Barcelona, Ed. Bosch, 2003, Vol. V, pág. 189.
En Puerto Rico, la doctrina ha reconocido la correlación entre las cargas del matrimonio y la adquisición de los fru-tos de los bienes privativos:
El principio de pertenencia de los frutos a la comunidad conyugal es absoluto, cualquiera que sea su origen, ya lo fue-ren naturales o civiles [,] siempre que se dediquen al levanta-miento de las cargas matrimoniales. Vázquez Bote, op. cit., pág. 181.
La correspondencia entre las cargas del matrimonio y la adquisición de los frutos, rentas e intereses del capital pri- *700 vativo de los cónyuges ha sido reiteradamente calificada en nuestra jurisdicción como basada en postulados de justicia económica.(16) Así lo reconocimos expresamente en Robles Ostolaza v. U.P.R., 96 D.P.R. 583, 594-595 (1968), donde postulamos que dicha correlación tiene como objeto “evitar injusticias económicas en la operación de la sociedad”. (17) Por todo esto, señalamos como ejemplo dos circunstancias que evidencian lo anterior:
... el Art. 1308(2) establece que serán de cargo de la sociedad de gananciales los atrasos devengados durante el matrimonio de las obligaciones a que estuviesen afectos los bienes propios de cada cónyuge y los gananciales. Esta carga está compen-sada por el Art. 1301(3) que dispone que son gananciales los frutos, rentas o intereses devengados durante el matrimonio procedentes de los bienes privativos o gananciales. Así tam-bién el Art. 1308(5) pone a cargo de la sociedad de gananciales el sostenimiento de la familia y la educación de los hijos. Com-pensa este cargo la disposición del Art. 1303 que dispone que pertenecen a la sociedad de gananciales los frutos e intereses devengados del usufructo que tienen los cónyuges en los bie-nes de sus hijos. Robles Ostolaza v. U.P.R., supra, pág. 595.
El Artículo 1362 español establece que una de las cargas de la Sociedad Legal de Bienes Gananciales es la adminis-tración ordinaria de los bienes privativos de cualquiera de los cónyuges. Nuestro Código Civil acogió la misma idea, *701 pero precisó mejor el alcance del lenguaje del precepto es-pañol al establecer en el inciso tercero del Artículo 1308 que “fijas reparaciones menores o de mera conservación hechas durante el matrimonio en los bienes peculiares de cualquiera de los cónyuges” serán a cargo de la sociedad de gananciales sin derecho a ser indemnizada. 31 L.P.R.A. sec. 3661(3). Esta carga, según argumentan Diez-Picazo y Gullón, va en “justa correspondencia a que los frutos y ren-dimientos de esos bienes son comunes o gananciales”; para los tratadistas, la administración ordinaria debe compren-der “los gastos de conservación y los ocasionados para que los bienes den sus frutos o rendimientos”. L. Diez-Picazo y A. Gullón, Sistema de Derecho Civil, 5ta ed., Madrid, Ed. Tecnos, 1997, Vol. IV, pág. 188.(18) A fin de cuentas, y como hemos expuesto, la lógica del código en cuanto a la ganan-cialidad de los frutos, rentas e intereses de los bienes pri-vativos de cada cónyuge está cimentada sobre factores evi-dentes de equidad.
De acuerdo con la discusión que antecede, y a la inter-pretación restrictiva que debemos aplicar al contrato de capitulaciones matrimoniales, no puedo suscribir la opi-nión mayoritaria. Si bien es cierto que en sus capitulacio-nes la pareja rechazó el régimen de Sociedad Legal de Bie-nes Gananciales y pactó la separación de bienes, también es cierto que instituyeron la Sociedad Legal de Bienes Ga-nanciales como sistema económico con respecto a los bienes adquiridos durante el matrimonio. A pesar de que, en *702 efecto, se pactó la estricta separación de bienes privativos, así como su administración y disposición, ya éstos son su-puestos dentro del sistema de ganancialidad. Así lo explica Diez-Picazo:
La existencia de la sociedad de gananciales no impone nin-guna limitación a los cónyuges en relación con su patrimonio privativo. El Código Civil no lo dice de manera expresa, pero es una regla que se deduce de todo su articulado. Cada con-sorte administra, pues, sus bienes privativos. En cambio, los frutos y ganancias de los bienes privativos y cualesquiera otras ganancias de los cónyuges son bienes gananciales, y por consiguiente, forman parte de su haber. Diez-Picazo, op. cit., pág. 177.
Las capitulaciones que nos ocupan fueron claras al es-tablecer el régimen de ganancialidad sobre bienes muebles e inmuebles adquiridos durante el matrimonio. Antes de contraer matrimonio, la pareja gozaba de plena libertad para pactar cualquier otro régimen económico o para esta-blecer un trato distinto a las cargas del matrimonio. No lo hicieron y, por ende, operan en pleno efecto las disposicio-nes sobre la sociedad de gananciales sobre todos los bienes adquiridos durante el matrimonio y en cuanto a las cargas que conlleva dicho sistema. Como explica Scaevola:
[L]os esposos futuros pueden convenir el régimen por el que ha de gobernarse su sociedad conyugal, elegido uno en con-creto —ahora el de gananciales— se ha de aceptar con todas sus consecuencias; con el pleno acatamiento de la normativa legal referente al mismo. Scaevola, op. cit. pág 230.
A pesar de lo anterior, el Tribunal de Primera Instancia entendió necesario celebrar una vista evidenciaría para dilucidar la controversia sobre la intención de las partes. En ésta, el Sr. González Durieux aceptó que todo lo que se acumulara durante el matrimonio sería de naturaleza ganancial. La notario que autorizó la escritura de capitu-laciones manifestó haberle advertido a la pareja que si se *703 incluía la cláusula que establecía el régimen ganancial para los bienes adquiridos durante el matrimonio, “daba lo mismo si la firmaban o no la firmaban, porque práctica-mente quedaban en sociedad legal de gananciales” y que no necesitaban firmar la escritura para establecer el régimen económico que habían configurado. La notario explicó que el Sr. González Durieux hizo las capitulaciones para sepa-rar los bienes que ya tenía de los que se adquirieran du-rante el matrimonio. Al cabo de esta vista, el Tribunal de Primera Instancia entendió que el régimen económico del matrimonio González-Guadalupe era el ganancial o de ad-quisiciones a título oneroso, postura que avaló el Tribunal de Apelaciones. Aunque, según he expuesto, no coincido con sus fundamentos, confirmaría la sentencia que recono-ció la existencia de la Sociedad Legal de Bienes Ganancia-les y, por lo tanto, la naturaleza ganancial del producto de los bienes privativos de cada una de las partes que son incluidos expresamente por el Código Civil entre los bienes “percibidos o devengados durante el matrimonio” que están sujetos al régimen ganancial. Art. 1301 del Código Civil, supra.

 Véase Maldonado v. Cruz, 161 D.P.R. 1, 27 (2004).

 J. Puig Bratau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1967, T. IV, Vol. 1, pág. 368, citando a Kahn-Freund.

 Puesto que son varias las razones que tuvo el legislador para seleccionar un régimen de la naturaleza del régimen ganancial, no serán objeto de discusión, pero una breve referencia a su origen nos brinda la idea general que conforma la esencia de dicho sistema económico matrimonial:
“Se dice que era costumbre en las tierras septentrionales de Europa que las mujeres acompañaran a sus maridos en la paz y en la guerra y que, por ello, era justo que compartieran, al lado de los peligros, las utilidades del botín. Tácito, al relatar las costumbres de los germanos, cuenta que, llegado el momento de tomar estado, se advertía a las mujeres que se convertían en socias de los trabajos y peligros (laborum pericolorumque socios).” L. Diez-Picazo y A. Guitón, Sistema de Derecho Civil, 5ta ed., Madrid, Ed. Tecnos, 1997, Vol. IV, pág. 177.
Los civilistas resumen la característica principal de la Sociedad Legal de Ga-nanciales en un proverbio atribuido en la doctrina a Palacios Rubios: “quien está a las ganancias, está a las pérdidas ....’’Véase Q.M. Scaevola, Código Civil: comentado y concordado extensamente, 2da ed., Madrid, Ed. Reus, 1967, T. XXII, pág. 508.

 J. Santos Briz, Derecho Civil: Teoría y Práctica, Madrid, Ed. Rev. Der. Privado, 1982, T. V, pág. 113.

 El Fuero Juzgo, de donde proviene este artículo, en su Título II, Núm. XVII, hablaba de “lo que ganaren o acrecieren” los cónyuges, mientras que el Fuero Real indicaba que “lo ganado y comprado durante el matrimonio” pertenecería a ambos cónyuges. Véase Scaevola, op. cit, pág. 230.

 Puig Brutau, op. cit., pág. 371.

 Rams Albesa resalta la importancia del análisis de este grupo de bienes e indica que
"... en la medida en que el comportamiento económico del matrimonio genera una reacción de ahorro-inversión en el que tiene su origen la masa ganancial, la problemática de los rendimientos adquiere, por modesta que sea, el primer plano en el interés del complejo entramado de relaciones que configuran la sociedad de ga-nanciales, pues en esta fuente, económicamente secundaria, se encuentran en em-brión, pero perfectamente caracterizados, todos los elementos que deben ser estudia-dos con mayor atención en los epígrafes destinados a la administración y gestión de la sociedad.” J.J. Rams Albesa, La Sociedad de Gananciales, Madrid, Ed. Tecnos, 1992, pág. 122.

 Véase Rams Albesa, op. cit., págs. 122-124.

 Entre los exponentes de esta explicación se encuentran García Goyena, Puig Brutau, Manresa y Cossío. Véase J.M. Manresa, Comentarios al Código Civil espa-ñol, 6ta ed. rev. Madrid, Ed. Reus, 1969, T. IX, págs. 681-686 y 735-737.

 Entre éstos, Rams Albesa, Roca Sastre y Lacruz. Véanse Puig Brutau, op. cit., pág. 589, y Rams Albesa, op.cit., págs. 122-124, quien acoge la explicación de Lacruz y rechaza la equiparación al usufructo:
“... la ganancialidad de los rendimientos generados por los privativos no proce-den de una verdadera titularidad del consorcio que es imposible técnicamente, sino de la estructura misma de la sociedad de gananciales y de su sentido íntimamente comunitario.” Rams Albesa, op. cit., pág. 124.

 Puig Brutau, op. cit., pág. 640.

 M. Fraticelli, Un nuevo acercamiento a los regímenes económicos en el ma-trimonio: la sociedad legal de gananciales en el derecho puertorriqueño, 39 (Núm. 1) Rev. Jur. U.I.P.R. 113, 131-132 (2005).

 Scaevola, op. cit., pág. 266.

 El Artículo 1308 de nuestro Código Civil establece que serán de cargo de la sociedad de gananciales:
“(1) Todas las deudas y obligaciones contraídas durante el matrimonio por cual-quiera de los cónyuges.
*699 “(2) Los atrasos o créditos devengados durante el matrimonio, de las obligacio-nes a que estuviesen afectos así los bienes propios de los cónyuges como los gananciales.
“(3) Las reparaciones menores o de mera conservación hechas durante el ma-trimonio en los bienes peculiares de cualquiera de los cónyuges. Las reparaciones mayores no serán de cargo de la sociedad.
“(4) Las reparaciones mayores o menores de los bienes gananciales.
“(5) El sostenimiento de la familia y la educación de los hijos comunes y de cualquiera de los cónyuges.
“(6) Los préstamos personales en que incurra cualquiera de los cónyuges” 31 L.P.R.A. see. 3661.

 Como dijera Scaevola:
“... la sociedad conyugal que aprovecha los frutos de las fincas, es la obligada a costear sus reparaciones ordinarias, tanto más cuanto que la conservación de aqué-llas contribuye directamente al sostenimiento de los frutos, y faltaría proporcionali-dad en el hecho de que donde se aumenta por medio de ciertos gastos el haber conyugal, se hiciere cargo a uno sólo de los dos consortes del importe de la reparación.” Scaevola, op. cit., pág. 508.

 Al describir la Sociedad Legal de Bienes Gananciales, Migdalia Fraticelli hace alusión a esta justicia correlativa presente en la relación entre cargas del ma-trimonio y el régimen de los frutos y menciona una de las instancias reparadoras:
“Algunos [bienes privativos] ingresan al fondo común porque constituyen ele-mentos de una correlativa justicia económica dentro del matrimonio, al nivelar sus activos y cargas, como es el caso de los frutos de los bienes privativos mencionados en el párrafo anterior, que compensan las reparaciones menores, el pago de atrasos o réditos devengados durante el matrimonio y otros gastos que se imponen como carga de la sociedad.” Fraticelli, supra, pág. 132.

 En esa opinión citamos el trabajo de R.E. Bemier, Las acciones de daños y perjuicios extracontractuales en la sociedad de gananciales, 20 Rev. Jur. U.P.R. 172, 214 (1950). Es de particular importancia la cita siguiente:
“En las disposiciones legislativas que regulan la sociedad legal de gananciales se encuentran elementos de activo y pasivo dentro de ésta. Entre estos elementos de activo y pasivo existe una correlación que evita toda clase de injusticias ... faltaría proporcionalidad en el hecho de que, donde se aumenta por medio de ciertos gastos el haber conyugal, se hiciera cargo de uno solo de los dos consortes del importe de las reparaciones.”

 El Código Civil español, en su Artículo 1381 establece que
“Q]os frutos y ganancias de los patrimonios privativos y las ganancias de cual-quiera de los cónyuges forman parte del haber de la sociedad y están sujetos a las cargas y responsabilidades de la sociedad de gananciales. Sin embargo, cada cón-yuge, como administrador de su patrimonio privativo, podrá a este solo efecto dispo-ner de los frutos y productos de sus bienes.”
Rams Albesa ata este artículo al Artículo 1362 del Código español y comenta que
“[l]a reiteración en que incurre [este artículo] acerca de la ganancialidad de los frutos privativos sirve, en cierto modo, para subrayar tal vez mejor recordar, que la administración ordinaria de éstos, así como la explotación regular de los negocios o el desempeño de la profesión, generan correlativas cargas para la sociedad de ganan-ciales, con la categorización de responsabilidad definitiva ....” Rams Albesa, op. cit., pág. 244. Véase, también, Manresa, op. cit., pág. 734.